## COMMONWEALTH *vs.* WAYNE CONLEY.

No. 95-P-710.

Suffolk. March 11, 1997. - August 20, 1997.

Present: DREBEN, GILLERMAN, & FLANNERY, JJ.

*Practice, Criminal,* Assistance of counsel, Instructions to jury. *Constitutional Law,* Assistance of counsel. *Assault and Battery by Means of a Dangerous Weapon. Evidence,* Scientific test.

A criminal defendant's trial counsel's tactical decision not to move for a forensic examination of the victim's knife to test for the presence of blood, despite the strong request of the defendant, was manifestly unreasonable and constituted ineffective assistance of counsel, where, if the blood of the defendant and another were on the knife, the credibility of the alleged victims, upon which the Commonwealth's case rested almost entirely, would have been seriously weakened, if not destroyed; the matter was remanded for further proceedings to determine whether the defendant had been prejudiced. [391-396]

On appeal from a criminal conviction, the defendant's objections to the judge's instructions to the jury were either waived or without merit. [396-397]

INDICTMENT found and returned in the Superior Court Department on November 5, 1993.

The case was tried before *Robert W. Banks,* J., and a motion for a new trial was heard by him.

*James E. Methe* for the defendant.

*Kristine Luongo Tammaro,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. The main contention of the defendant in his appeal from his conviction of assault and battery by means of a dangerous weapon (against Donald Hurld)[1] and from the denial of his motion for a new trial is that it was manifestly unreasonable for

---

[1] The defendant was indicted for mayhem, two counts of armed assault with intent to murder (one against James Richard and one against Hurld), and two counts of assault and battery by means of a dangerous weapon, to wit: a razor

counsel, despite his request, to fail to file a motion to inspect the alleged victim's knife for blood. The defendant first made his request prior to trial and repeatedly asked counsel about the status of the motion. Although counsel told the defendant that he would file the motion, he never did so. After the trial was over, or perhaps earlier, counsel informed the defendant that he had filed the motion but that it had been denied. Subsequent to an evidentiary hearing, the trial judge denied the defendant's motion for a new trial on the ground that counsel's failure to move for forensic testing of the knife was based on trial tactics. We remand for further proceedings.

In order to determine the validity of the defendant's claim of ineffective assistance of counsel, "a discerning examination and appraisal" of the factual circumstances of the case is required. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). *Strickland* v. *Washington*, 466 U.S. 668, 690 (1984).

The charges against the defendant grew out of a vicious melee on October 9, 1993, between the defendant and the alleged victims, Donald Hurld and James Richard, in front of a bar on West Broadway in the South Boston section of Boston. All three had been drinking; Hurld had also ingested cocaine. Each was injured during the fight by a sharp cutting instrument, Hurld very seriously.

The Commonwealth's account of the incident, presented primarily through the testimony of Richard and Hurld, was that after they and their friend Jeffrey Baird had left the bar at about 2 A.M., and while they were seeking to hail a taxi, a car driven by the defendant and containing a woman passenger came to the curb. Richard paid a compliment to the woman, and when she smiled in response, the defendant attacked Hurld. Hurld did not hear the compliment. When he saw the defendant screaming at the woman in a "wild maniacal state," Hurld testified, he turned away to avoid an altercation. What he remembered next was leaning against the vehicle, believing his face to have been cut open, and "feeling the sea air inside [his] whole face."

Baird saw Hurld, his face slashed and bleeding, banging the defendant against the car. Richard, hearing bodies crashing against the car, turned and saw Hurld and the defendant fighting. The defendant was flailing his hands. Seeing Hurld's face was bloody and that he was pointing to the defendant, Richard ran to the defendant and grabbed his right shoulder. He claimed

(one against Richard and one against Hurld). He was acquitted on four of the five charges.

that the defendant had a straight-edged razor with a four-to-six inch blade with which he cut Richard's head. Having had three years of Korean karate, Richard gave the defendant "a turning side kick to the head" knocking him to the ground. The defendant got up and, after more fighting, Richard·threw the defendant into the street. From a distance, the defendant threatened Richard whereupon Richard reached into his pocket, unsheathed a knife and said, "Let's party now." Richard never used the knife as the defendant ran away, frightened, with Richard in pursuit. Richard dropped behind and saw that the defendant had stopped approximately ·at the police station on Silver Street.

Richard returned to the scene of the struggle, heard that Hurld "wasn't going to make it," and "lost control." As "I couldn't catch [the defendant] I took it out on his motor vehicle. . . . I gave the passenger side window a side kick that made the window explode. . . . I took my knife back out of my pocket and I punctured all four tires." By this time the police had arrived and, seeing Richard, ordered him to drop the knife. When he refused, one officer cracked Richard's wrist with a bat or flashlight, and only then did he let go of the knife.

The defendant's version of the events differed sharply. The defendant's passenger, Elizabeth Schallmo,[2] testified that while she was still in the car, two men were standing nearby on the sidewalk. "One of the men said, look at the tits on her. And the other man asked me if I was ever fucked by a real man." Because the men were leaning against the car, Schallmo asked the defendant to walk her to her door. He asked the men to move, they asked him what he was going to do about it, and then they threw him against the hood of his car. Shouting for help, he punched back, and the three men ended on the ground fighting. Schallmo screamed; she saw the defendant running toward her chased by Richard holding a knife and yelling that he was going to kill him.

The defendant's testimony supplemented Schallmo's. The two alleged victims, high on drugs, wouldn't let him open the car door and shoved him against the car and punched him. After he started punching back, he saw that Richard had a buck knife which he tried to grab. While Richard and he were wrestling for

[2]Schallmo was the defendant's former girlfriend and the mother of his two children. There was testimony at trial that both Schallmo and the defendant had different partners at the time of the incident.

the knife, Hurld was punching the defendant. In the course of the defendant's pulling at Richard's wrist, the knife came down across Hurld's face. The defendant also testified that after he broke free, when he saw Richard coming at him again, he ran to the police station. When he stopped and turned, he saw Richard wiping the knife.

Only one weapon was recovered — Richard's knife. Based on the defendant's statement and Richard's irrational behavior at the scene, including his refusal to drop the knife, the police placed Richard under arrest. After further investigation, Richard was released, and the defendant was indicted on the charges set forth in note 1, *supra*. He was found not guilty on the mayhem charge, the charges of armed assault with intent to murder, and the assault and battery by means of a dangerous weapon against Richard, but was found guilty of the charge of assault and battery by means of a dangerous weapon upon Hurld.

After his conviction, the defendant moved for a new trial on the ground that he had been denied effective assistance of counsel under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Accompanying the motion were two affidavits, one of the defendant and one of trial counsel.

Counsel's affidavit was to the following effect. Counsel had had discussions with the defendant prior to trial and had been asked by him to file a motion for forensic testing of the knife that was recovered from Richard. Although counsel told the defendant that he would file such a motion, he did not do so. The defendant considered the testing important because if his blood or the blood of Richard or Hurld were found on the knife, it would lend credibility to the defendant's testimony that it was the only knife present during the incident and that this knife was the one that had caused the injuries to the three men.[3] The Commonwealth's theory at trial, as stated in counsel's affidavit, was that the defendant had another knife in his possession that caused the alleged victims' injuries, but such a knife was not located. The Commonwealth never had Richard's knife tested, and it was the only weapon introduced in evidence.

The trial judge granted a hearing on the defendant's motion for a new trial. The defendant's trial attorney testified that he

---

[3] Richard, it will be remembered, had claimed that he only took out the knife after the struggle, and that the defendant had run away upon seeing it.

saw the defendant numerous times prior to trial and that the issue of the filing of a motion for testing of the knife was discussed more than once. The defendant had made it clear to counsel that he wanted the motion filed. Although initially counsel had tried to talk the defendant out of it, counsel indicated "at least once" that he would file the motion. He acknowledged that "it would have been very significant" if there were blood on the knife and he believed he had told the defendant (although it is not clear when this occurred, and it may have been after trial) that the motion had been filed and denied. Pressed on cross-examination by the Commonwealth at the motion hearing, counsel stated that his "opinion not to have the knife tested was based on tactics of trial" but on redirect examination explained that that was not the reason for not filing the motion. When asked whether he had decided not to file the motion because "that's the way you felt the case should be handled even though the client told you that he wanted the motion filed," he answered:

> A. "No. I answered [the prosecutor's] question that in my opinion it was better not to test the knife for tactical reasons. Mr. Conley felt otherwise. And I didn't file the motion not because I was overriding Mr. Conley's instructions to me, but because I got bogged down in other aspects of the trial. So I just didn't do it."

> Q. "It sounds like you're basically testifying that you kind of forgot?"

> A. "It was not uppermost in my mind."

The judge then asked a number of questions, as set forth in the margin,[4] seeking to determine whether the failure to file the motion was a strategic decision.

---

[4] JUDGE: "Having in mind I was the trial judge, [counsel], you did try this case cross-examining the police in what.they failed to do in performing tests on the knife; did you not?"

A:     "That is correct.

JUDGE: "You emphasized the failure of the police to conduct tests; isn't that correct?"

A:     "I believe I did, Judge."

The defendant testified that after reading the victims' account of the events in the grand jury transcripts, he discussed with counsel "the fact that there was only one weapon — the victim, Jamey Richardson's knife."[5]

> "And I said if Jamey Richardson says he didn't cut anyone with that knife then my blood and Hurld's blood shouldn't be on that knife. And he said correct.

> "I said, well, you know, let's have the knife tested. I'm sure, I'm positive that our blood would be on that knife somewhere. He said, well, I want you to think. He said if the blood isn't on the knife then, like, there might be some problem with your story. I said I don't have anything to think about. I said I want you to file a motion to have that knife tested immediately."

> Q. "And what did he tell you in response to that?"

> A. "He said, are you sure? I said, I'm positive. I want you to do it immediately."[6]

JUDGE:   "You even filed a motion in the court under [Mass.R.Crim.P. 24, 378 Mass. 895 (1979)] asking that this court instruct the jury on the failure of the Commonwealth to conduct tests on the knife; is that right?"

A:       "That would be *Bowden. Commonwealth* v. *Bowden* [379 Mass. 472, 485-486 (1980)]."

JUDGE:   "That's the *Commonwealth* v. *Bowden* approach. That's a strategic, tactical approach; is it not?"

A:       "That's correct; yes."

JUDGE:   "And is that the strategic approach you took during the course of this trial pertaining to that knife?"

A:       "Yes."

JUDGE:   "Thank you."

[5]The defendant referred to Richard as "Richardson."

[6]The defendant also testified that counsel told him the motion was filed but that there were no results yet; that at the start of the trial, the defendant asked whether there were results, and was told that they never tested it and they didn't even have the knife. He did not find out until much later when he obtained the docket that the motion had not been filed.

The judge's memorandum denying the motion stated in relevant part:

> "[D]efendant's trial counsel . . . testified that his reason for not moving for forensic testing of the knife was based on strategic considerations. In his opinion, forensic testing was not crucial to the defendant's case, and he believed that it was better trial strategy not to have the knife tested. The defendant argued that he requested his attorney to file such a motion prior to trial; and at one point, his attorney assured him he would do so. Ultimately, however, the defendant's trial counsel decided that the better strategy was to exploit the police failure to conduct forensic testing as a basis for showing that the investigation was ineptly conducted.
>
> "The court, therefore, finds that the failure to move for forensic testing was based on trial tactics, and not attorney ineptitude."

In the conduct of a defendant's trial, certain decisions sometimes called "personal" or "fundamental" ones, *Jones* v. *Barnes*, 463 U.S. 745, 751 (1983), are for the defendant alone, e.g., whether to plead guilty, to waive the right to trial by jury, to testify in one's behalf, to take an appeal, or to waive the right to counsel. Others, often called strategic or tactical matters, rest ultimately in counsel, with the degree of required client consultation and participation dependant on the circumstances. See generally 2 LaFave, Criminal Procedure § 11.6 (1984); 1 ABA Standards for Criminal Justice § 4-5.2 and commentary (2d ed. 1980). Cf. *Commonwealth* v. *Amirault*, 424 Mass. 618, 645 n.19, 652 n.24 (1997).

That the decision not to file the motion for a forensic examination of the knife could be characterized as a trial tactic does not, for that reason, render the decision immune from scrutiny. *Commonwealth* v. *Adams*, 374 Mass. 722, 729 (1978). The defendant may prevail if he shows that counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and has also "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. at 96. Where tactical or strategic decisions of counsel are at issue, the review is conducted "with some deference to avoid characterizing as

unreasonable a defense that was merely unsuccessful." Rather than merely unreasonable, the "challenged tactical judgments must be 'manifestly unreasonable.' " *Commonwealth* v. *White*, 409 Mass. 266, 272-273 (1991), quoting from *Commonwealth* v. *Adams*, 374 Mass. at 728.

The decision challenged here is the decision not to investigate the knife despite the strong request of the defendant. The Supreme Court's discussion in *Strickland* v. *Washington*, 466 U.S. at 688, 690-691, bears directly on this point:

> "Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant. . . . From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's case and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. . . .

> "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

> "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. *In particular, what investigation decisions are reasonable depends critically on such information* . . . . [7] *In short, inquiry into counsel's conversations with the defendant*

---

[7]The material omitted by the ellipsis is as follows: "For example, when the facts that support a certain potential line of defense are generally known to

*may be critical to a proper assessment of counsel's investigation decisions . . . ."* (Emphasis supplied.)

Thus, "[a] claim of failure to interview a witness may sound impressive in the abstract, but it cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." *United States* v. *Decoster*, 624 F.2d 196, 209 (D.C. Cir.), *S.C.*, 598 F.2d 311, cert. denied, 444 U.S. 944 (1979). This reasoning was the basis of the decision in *Commonwealth* v. *White*, 409 Mass. at 274, which held that a tactical decision not to interview and call two witnesses was not unreasonable. Since "[c]ommon sense dictates that a defendant's description of events underlying a criminal charge should be considered reliable . . .," counsel could reasonably conclude, based on the defendant's description of events and conversations, that "calling the witnesses would expose the general inconsistency in the defendant's position and highlight the general consistency in the complainant's testimony." *Id.* at 275.

Where the facts are not known to the attorney, and the information is critical to the client's defense, counsel may not decline to investigate because he fears the facts may become available to the Commonwealth. *Commonwealth* v. *Haggerty*, 400 Mass. 437, 441 (1987) (counsel ineffective in not hiring an expert to determine if defendant's actions were the cause of the victim's death).

All the more so when the client "insist[s] that the tests would help establish his innocence." *Jones* v. *Wood*, 114 F.3d 1002, 1011 (9th Cir. 1997). Jones, a habeas corpus petitioner, was convicted of murdering his wife. One of his claims was that if tests were conducted on the clothes he was wearing on the night of the murder, they would show that the blood on his clothing came from the cut on his hand rather than from his wife's wounds. Despite his requests, his trial lawyer never made any attempt to test the blood on his jeans. The State argued that by not having the physical evidence tested, Jones's trial counsel "was able to emphasize before the jury the State's failure to test the physical evidence, the unfairness of the police investigation, and the existence of reasonable doubt as to whether Jones

counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."

was the perpetrator." *Ibid.* Noting that this was probably not counsel's strategy, since he repeatedly indicated his intention to test the evidence, the court held, "Even if failing to test the physical evidence was part of his lawyer's trial strategy, under the circumstances of this case, where Jones insisted the tests would help establish his innocence, see *Strickland,* 466 U.S. at 691 (reasonableness of trial strategy must be measured against 'counsel's conversations with the defendant'), we believe it would not be sound and would clearly fall below the *Strickland* level." *Ibid.* The court pointed out that if Jones was correct that the blood on the jeans was his and not his wife's, "that would seriously undermine the prosecution's case, since a crucial State theory is that the murderer would necessarily have been covered in [Jones's wife's] blood and could not have exited the house without leaving blood traces." *Id.* at 1012.

In *United States* v. *Baynes,* 687 F.2d 659, 668 (3d Cir. 1982), the court held counsel was ineffective in failing to listen to a voice exemplar the government had obtained from the defendant and to compare it with the government's intercepted telephone conversation. Counsel explained he was fearful of using the exemplar because he did not want the jury to hear the defendant read the same incriminating words he allegedly spoke on the telephone. He also had a number of additional tactical reasons. The court noted that while the decision whether to utilize a particular item of evidence may be a matter within the reasonable bounds of trial counsel's discretion, such discretion does not extend to the failure to investigate a critical source of potentially exculpatory evidence. *Id.* at 666. Had counsel established that it was not the defendant on the intercepted tape, he would probably have been acquitted. "Even were this fact, standing alone, not sufficient to compel the average competent attorney in this jurisdiction to conduct a thorough aural comparison of the voice exemplar with the intercepted recording, we have no doubt that *such a duty arose after [the defendant] repeatedly asserted . . . that his was not the voice on the intercepted conversation*" (emphasis supplied). *Id.* at 668. Contrast *Government of the V.I.* v. *Weatherwax,* 77 F.3d 1425 (3d Cir.), cert. denied, 519 U.S. 1020 (1996), where the tactical decision did not involve the defendant's superior knowledge as to the facts. The tactical decision at stake in that case and upheld by the court was not to inform the judge that a juror had taken a newspaper article containing an unfavorable

article about the defendant into the jury room. The lawyer decided not to do so despite the defendant's wishes on the ground that he thought the present jury were the most favorable one the defendant could have.[8]

In the case at bar, the defendant testified that he told counsel that he was "positive" that his blood and that of the alleged victims "would be on the knife." That he was insistent that the blood be tested was corroborated by his attorney. There is nothing in the record to suggest that counsel had any reason to believe his client was untruthful.[9] As to the factual basis of his assertion, there is no doubt that the defendant had superior knowledge. If, as he asserted, his blood and that of Hurld was on the knife, the credibility of the alleged victims would have been seriously weakened, if not destroyed. The government's case depended almost entirely on their testimony, thus heightening the importance of the investigation. See *Strickland,* 466 U.S. at 696; *United States* v. *Decoster,* 624 F.2d at 210; *Jones* v. *Wood,* 114 F.3d at 1011 (claims based on a duty to investigate must be considered in light of the strength of the government's case).

We conclude that in these circumstances, looking at counsel's action with the required highly deferential scrutiny, see *Strickland* v. *Washington,* 466 U.S. at 689, counsel's failure to file the motion for forensic investigation of the knife was "manifestly unreasonable."[10]

Whether the second prong of *Commonwealth* v. *Saferian,* has been satisfied — that counsel's failure has "likely deprived the defendant of an otherwise available, substantial ground of defence", 366 Mass. at 96 — cannot be determined on the record before us. As in *Jones,* 114 F.3d at 1012, "[a]t this stage in

---

[8]The *Weatherwax* opinion, 77 F.3d at 1433-1438, contains a useful discussion of the considerations underlying the constitutional requirement that counsel consult with his or her client.

[9]Counsel is usually protected against a claim of ineffective assistance of counsel by a good faith reliance on the client's account of the facts. See *Mulligan* v. *Kemp,* 771 F.2d 1436 (11th Cir. 1985), cert. denied, 480 U.S. 911 (1987). In addition, counsel can follow the suggestion in *Commonwealth* v. *Adams,* 374 Mass. at 730 n.4, or in 1 ABA Standards for Criminal Justice § 4-5.2 (2d ed. 1980) and provide a record of his or her actions.

[10]Because of our determination that counsel's actions were "manifestly unreasonable," we have no occasion to consider the effect of counsel's representation that he would file the motion and his failure to do so. See *Commonwealth* v. *Chetwynde,* 31 Mass. App. Ct. 8, 13 & n.4 (1991).

the proceedings, there is no requirement that [the defendant] provide evidence corroborating his allegations of what the test results will show." On remand in *Jones*, the evidence was to be made available to the defendant to develop fully his ineffective assistance of counsel claim. "In particular, the test results may establish the prejudice required to make out such a claim." *Id.* at 1009 & n.2. See also *Toney* v. *Gammon*, 79 F.3d 693, 700 (8th Cir. 1996).

Accordingly, following the procedure of *Jones*, we remand the matter to the Superior Court to make the knife available for testing by the defendant and thereafter to conduct an evidentiary hearing to enable him to present his claim of prejudice. In the unlikely event that the judge determines that testing for blood is no longer feasible, by reason of the passage of time or otherwise through no fault of the defendant, a new trial is to be granted and the defendant permitted to describe to the jury the circumstances of his requests for testing and to have the jury instructed that despite his requests, such testing did not occur. Cf. *Commonwealth* v. *Olszewski*, 416 Mass. 707, 716-717 (1993), cert. denied, 513 U.S. 835 (1994).

The remaining contentions of the defendant are without merit. At trial the defendant asked for jury instructions on accident and on the failure of the Commonwealth to perform tests on Richard's knife. Although the judge did not give the instructions, counsel did not object and, subsequent to the judge's charge, indicated that he was content with the instructions.

There was no error, let alone a substantial risk of a miscarriage of justice. In defining the offense of assault and battery by means of a dangerous weapon, the only indictment on which the defendant was found guilty, the judge stated that the Commonwealth had to prove that the "touching was intentional in the sense it was not accidental" and, in summing up the requirements of the offense, repeated that the Commonwealth had to prove "that the touching was intentional in the sense that it did not happen accidentally." These instructions "gave the defendant the benefit in substance of the hypothesis of accident." *Commonwealth* v. *Hakala*, 22 Mass. App. Ct. 921, 923 (1986). See *Commonwealth* v. *Lowe*, 391 Mass. 97, 108-112, cert. denied, 469 U.S. 840 (1984); *Commonwealth* v. *Ferguson*, 30 Mass. App. Ct. 580, 584 (1991). ·

There was also no error in the refusal of the judge to give a *Bowden* instruction (*Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 [1980]), concerning the failure of the police to perform tests on the knife. "The decision whether to instruct the jury regarding the failure of the police to conduct forensic tests lies within the discretion of the trial judge." *Commonwealth* v. *Rivera*, 424 Mass. 266, 274 (1997). *Commonwealth* v. *Cordle*, 412 Mass. 172, 177 (1992). The judge did not remove the issue from the jury's consideration but rather allowed counsel latitude in argument. *Commonwealth* v. *Rivera*, 424 Mass. at 274.

Accordingly, the matter is remanded to the Superior Court to enable the defendant to perform the previously requested testing of the knife and to present evidence of the prejudice prong of his ineffective assistance claim at an evidentiary hearing, and for such further proceedings as are consistent with this opinion.

*So ordered.*