## Commonwealth *vs.* Mark Clarke.[1]

No. 95-P-1408.

Suffolk. November 5, 1997. - April 3, 1998.

Present: Warner, C.J., Dreben, & Flannery, JJ.

*Controlled Substances. Firearms. Practice, Criminal,* Motion to suppress, Grand jury proceedings, Assistance of counsel. *Probable Cause. Constitutional Law,* Search and seizure. *Search and Seizure,* Warrant. *Evidence,* Exculpatory, Informer, Identification, Grand jury proceedings. *Grand Jury.*

Evidence at the trial of indictments was sufficient to establish the defendant's constructive possession of a quantity of cocaine, three handguns and some ammunition found in a rear bedroom in a certain apartment, where the jury could reasonably infer that the defendant occupied that room [504-506]; however, there was no evidence linking the defendant to a front bedroom in which was found a concealed sawed-off shotgun, and the defendant was entitled to a verdict of not guilty on an indictment alleging his unlawful possession of that weapon [506-507].

The record of a motion to suppress evidence seized pursuant to a search warrant demonstrated no reasonable probability that the wrong building was searched, where the description of the building searched matched that in the warrant and where the executing officer was familiar with the target premises. [507-508]

At the trial of a criminal case, the judge correctly excluded from evidence probation records of another, proffered by the defendant to show that the other person committed the crime, where any inferences to be drawn from the records would not have tended to exonerate the defendant. [508-509]

In a criminal case, the judge correctly denied the defendant's motion to dismiss the indictments on the ground that the integrity of the grand jury was impaired, where the record demonstrated that the grand jury heard sufficient evidence to establish the identity of the defendant and probable cause to arrest him and where the defendant did not demonstrate that false or deceptive evidence was knowingly presented for the purpose of obtaining an indictment and that such evidence influenced the grand jury's decision. [509-510]

The defendant in a criminal case demonstrated no prejudice from the judge's

[1]The defendant contends that his real name is Jeffrey Kramer. When he was arrested, however, he gave police the name Mark Clarke. Both names appear on the indictments.

refusal to order the prosecution to disclose the identity of a confidential informant who had provided information used by police to secure a search warrant for certain premises but who was not an active participant in the crimes with which the defendant was charged. [510-511]

A criminal defendant did not demonstrate that his trial counsel's tactics and strategy were manifestly unreasonable so as to constitute ineffective assistance of counsel. [511-512]

INDICTMENTS found and returned in the Superior Court Department on June 12, 1991.

A pretrial motion for disclosure of an informant's identity was considered by *James P. Donohue*, J., and, after a motion to suppress evidence was heard by *Barbara J. Rouse*, J., the cases were tried before her.

*Allison Young Beauparlant* for the defendant.

*Kristine Luongo Tammaro*, Assistant District Attorney, for the Commonwealth.

WARNER, C.J. The defendant was convicted by a Superior Court jury of possession of a class B substance (cocaine), G. L. c. 94C, § 32A(*c*), possession of a class D substance (marihuana), G. L. c. 94C, § 32C, unlawful possession of a sawed-off shotgun, G. L. c. 269, § 10(*c*), three counts of unlawful possession of a firearm, G. L. c. 269, § 10(*h*), and unlawful possession of ammunition, G. L. c. 269, § 10(*h*). On appeal, he challenges the sufficiency of the evidence against him, and argues that (1) three pretrial motions were erroneously denied; (2) the trial judge erred in ruling that the probation records of an unavailable witness were inadmissible; and (3) his motion for a new trial based on ineffective assistance of counsel should have been granted. Because we conclude that the evidence was insufficient to support his conviction for illegal possession of a sawed-off shotgun, G. L. c. 269, § 10(*c*), we reverse the judgment with respect to that charge. We affirm, however, in all other respects.

Taken in the light most favorable to the Commonwealth, the jury could have found the following facts. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). On the morning of May 15, 1991, Detective Elton M. Grice, of the Boston police department, observed a confidential informant enter the target location on Hiawatha Road to participate in a controlled drug purchase. After leaving the building, a blue and brown three-family wood frame apartment house, the informant presented

Grice with cocaine purchased from the occupant of apartment one. Grice subsequently applied for and obtained a search warrant for apartment one, 6 Hiawatha Road, the address provided by the informant. The warrant also described the building as a "blue and [b]rown three family wood frame apartment building." Grice and several other officers returned to the same location later that afternoon to execute the warrant.

Once inside the apartment, police officers observed the defendant and another man, later identified as Johnny Junior,[2] running from the rear bedroom toward the kitchen. Two additional men were observed sitting on a couch. The defendant was next seen running back into the hallway leading from the kitchen to the bedroom, at which point he was apprehended by Grice. A search of the closet in the rear bedroom yielded a plastic bag containing twenty-five individually packaged pieces of rock cocaine concealed inside a shoe and a bag of marihuana. Cash in the amount of $840 and some small red plastic bags were found on top of a chest of drawers in the bedroom, along with a social security card and birth certificate bearing the name "Mark Clarke." Underneath a mattress in the same room, police discovered a loaded .22 caliber handgun and a brown paper bag containing two .38 caliber handguns. A search of the bathroom revealed an additional $825 in plain view. Police then proceeded to search the front bedroom and discovered, among other items, a loaded sawed-off shotgun concealed underneath the bed.

After finding the drugs and the firearms, the officers searched all four men and the defendant was found to possess a set of keys that opened both the apartment door and the main door to the building. The two men who had been sitting on the couch were released, and the defendant and Johnny Junior were given Miranda warnings and placed under arrest.[3] Before being escorted to the police station, the defendant, who was not wearing a shirt, retrieved one from the rear bedroom.

1. *Sufficiency of the evidence on the element of possession.* The defendant first challenges the judge's denial of his motion for a required finding of not guilty on all charges. He argues that the evidence adduced at trial was insufficient to prove that he constructively possessed any of the illegal contraband

---

[2]Junior was arrested along with the defendant and similarly charged.

[3]At the time of the defendant's trial, Junior was a fugitive.

recovered from the apartment and that his motion, therefore, should have been granted. We think the evidence was sufficient to establish the defendant's constructive possession of the cocaine, the three handguns, and the ammunition found in the rear bedroom.[4] We reach a different conclusion, however, with respect to the sawed-off shotgun.

When the defendant was apprehended, he was not in actual possession of any drugs or weapons. Accordingly, the Commonwealth proceeded at trial on a theory of constructive possession. Proof of constructive possession requires a showing "that the defendant was aware of the presence of the particular [item of contraband] in question . . . , and that he had the ability and intention to exercise control over it." *Commonwealth* v. *Araujo*, 38 Mass. App. Ct. 960, 961 (1995). While a defendant's presence in an area where contraband is found is not enough to establish constructive possession, "presence, supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency." *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991), quoting from *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409, 410 (1989). A defendant's "residential status at a premises is a relevant inculpatory factor to be considered in determining whether he can be regarded as being in constructive possession of contraband found on the premises, since it indicates more than mere presence." *Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 781 n.5 (1991).

Here, there was ample circumstantial evidence that the defendant lived in the apartment and occupied the rear bedroom, and that he was in constructive possession of the cocaine and three loaded handguns recovered from that room. First, when he was arrested, the defendant was in possession of a set of keys which opened the main door to the building as well as the apartment door. Moreover, he was not only present in the apartment when police executed the search warrant, but was observed running from the rear bedroom moments after police knocked and entered to execute the search warrant. A birth certificate and social security card bearing his name were also found on a

---

[4]Because the defendant's conviction for possession of marihuana was placed on file with his consent, it is not properly before us. See *Commonwealth* v. *Mora*, 402 Mass. 262, 263 n.1 (1988). We note, however, that our analysis regarding the marihuana, which was found in the closet of the rear bedroom, would be the same as for the other contraband found in that room.

bureau inside the room.[5] Finally, when given the opportunity to retrieve a shirt before going to the police station, the defendant returned to the rear bedroom to do so. In these circumstances, the jury could reasonably have inferred that the defendant occupied the rear bedroom and was, indeed, in constructive possession of the contraband discovered therein. See *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912, 912 (1986) (constructive possession supported by "evidence that the contraband was found in proximity to personal effects of the defendant in areas of the dwelling . . . to which other evidence indicates the defendant has a particular relationship"); *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 556-557 (1991) (defendant's personal belongings in room and closet in which drugs were found sufficient to support an inference of constructive possession).

In contrast, there was no evidence linking the defendant or any of his possessions to the front bedroom. See *Rivera, supra* at 558 (finding insufficient evidence to link the defendant to the smaller of two bedrooms in an apartment, notwithstanding the fact that she occupied the larger of the bedrooms). Indeed, the items found in the front bedroom tended to show that someone other than the defendant occupied that room.[6] In these circumstances, we conclude that the evidence was not sufficient to prove that the defendant knew of the existence of the sawed-off shotgun found under the bed in that room, or that he "had the intent or ability to exercise dominion or control over [it]." *Ibid.*[7] The defendant's conviction for possession of a sawed-off

---

[5]The defendant makes much of the fact that his real name is not Mark Clarke and appears to argue that the identification cards bearing that name cannot, therefore, be used to link him to the bedroom in which they were found. There is no dispute, however, that the defendant identified himself as Mark Clarke when he was arrested, signed that name to the booking sheet, and provided police with biographical information and a social security number matching those on the birth certificate and the social security card found on the bureau. Thus, the presence of the documents could properly be used to link the defendant to the rear bedroom. See *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912, 912-913 (1986) (constructive possession properly inferred from proximity of personal papers in room where drugs were found).

[6]Items found in the front bedroom included a gram weight scale and plastic baggies, shotgun shells, and a wallet which contained identifications for Junior, Faulk Tolian, William Neal, and Artis Male, and a cable television bill bearing the name William Neal.

[7]The jury were also instructed on a joint venture theory. The Commonwealth

shotgun, therefore, must be reversed.

2. *Motion to suppress.* The defendant next challenges the judge's denial of his pretrial motion to suppress the drugs, weapons, and ammunition discovered in the apartment. He maintains that the search warrant failed to describe with particularity the place to be searched, as required by the Fourth Amendment to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276, § 2. In support of his argument, the defendant contends that the warrant authorized a search of apartment one at 6 Hiawatha Road in Mattapan, while the actual premises searched may have been apartment one at 2 Hiawatha Road. The Commonwealth acknowledges the statutory and constitutional requirements regarding descriptions contained in search warrants, but argues that in this case, "the description [on the warrant was] sufficient to enable the executing officer[s] to locate and identify the premises with reasonable effort," and that there was, therefore, no risk that the wrong building was mistakenly searched. *Commonwealth* v. *Rugaber*, 369 Mass. 765, 768 (1976), quoting from *United States* v. *Sklaroff*, 323 F. Supp. 296, 321 (S.D. Fla. 1971). We agree.

Initially, we note that it is not at all clear that the number 6 did not appear on the building searched pursuant to the warrant. At the suppression hearing, the defendant offered a map from

---

argues that the defendant has waived any argument on whether the evidence was sufficient to establish a joint venture by failing to brief the issue. Because the jury may have convicted solely on the theory of constructive possession, the judgment must be reversed in any event. See *Commonwealth* v. *Sanchez*, 40 Mass. App. Ct. 411, 412 (1996). We have considered the sufficiency of the evidence to support the defendant's conviction as a joint venturer, however, in order to determine whether the Commonwealth may retry him on that theory, and conclude that no reasonable jury could have found the elements of joint venture beyond a reasonable doubt. See *Commonwealth* v. *Sabetti*, 411 Mass. 770, 779 (1992).

The defendant also points to the prosecutor's failure to elicit from Grice the fact that others were present in the apartment when the warrant was executed, as an example of exculpatory evidence improperly withheld from the grand jury. For the reasons set out in part 3, and because Grice testified at trial that he had previously observed these individuals approach the building, ring the doorbell, and wait to be admitted by someone inside the apartment, we see no likelihood that either of the men found present in the apartment at the time of the execution of the warrant shared the apartment with the defendant, or that Grice's omission, therefore, prejudiced him.

the assessors' records, indicating that the lot on which the house was located was designated as "number 2" Hiawatha Road. However, Detective Grice, the officer who executed the warrant, testified that he observed the number 6 on the front door of the building in question just prior to doing so. In light of the judge's denial of the defendant's motion, we assume that she found Grice's testimony credible. See *Commonwealth* v. *Houle*, 35 Mass. App. Ct. 474, 475 (1993). In any event, we think Grice's familiarity with the target location eliminated any possibility that the wrong building was searched. When, as here, the officer who obtained and executed the search warrant had earlier that day participated in surveillance of the target location, and when the physical description of the building searched matched that on the warrant, we discern no "reasonable probability that a place other than the one intended to be searched under the warrant might be mistakenly searched." *Commonwealth* v. *Walsh*, 409 Mass. 642, 645 (1991). Thus, we hold that the warrant was adequate and the judge's denial of the defendant's motion to suppress proper. *Ibid.* (where "a description in a warrant facially contains adequate particulars, but, in application to a particular situation, the description is ambiguous, the knowledge of the executing officer may be sufficient to overcome the ambiguity").

3. *Admissibility of unavailable witness's probation records.* The defendant next claims that the judge erred in refusing to allow him to introduce the probation records of Francisco Otero, also known as Victor Gonzales, one of the men sitting on the couch when police executed the search warrant and later released. Otero invoked his Fifth Amendment rights when called as a defense witness at trial, and was declared "unavailable" by the judge. The defendant argues that the records, which included convictions on charges similar to those faced by the defendant, were exculpatory and should, therefore, have been admitted in order to show that Otero, rather than the defendant, likely committed the crimes.

As a general rule, a defendant is entitled to "show that crimes of a similar nature have been committed by some other person when the acts of such other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of the defendant as the person who committed the crime." *Commonwealth* v. *Keizer*, 377 Mass. 264, 267 (1979), quoting from *State* v. *Bock*, 229 Minn. 449, 458 (1949). The

trial judge's decision on whether to admit such evidence shall not be set aside unless "justice requires a different result." *Keizer, supra* at 267. This is not such a case. Although Otero's convictions may have tended to show that he participated in the crimes with which the defendant was charged, such a finding would not have tended to exonerate the defendant. See *Commonwealth* v. *Beverly*, 389 Mass. 866, 870 (1983) (constructive possession of contraband need not be exclusive). Moreover, while the defendant was arrested in May, 1991, Otero's record reveals charges in 1989, 1992, and 1993. Finally, the crimes for which Otero was convicted, while similar to those at issue here, were not unique or sufficiently unusual to compel an inference that he, alone, was the likely perpetrator or, therefore, to cast doubt on the defendant's involvement. *Commonwealth* v. *Hunter*, 426 Mass. 715, 717 (1998) (act of strangulation not sufficiently unusual to warrant introduction of another's similar acts). Contrast *Commonwealth* v. *Keizer, supra* at 266-267 (robbery committed by similar methods while defendant was in custody).

4. *Integrity of the grand jury.* The defendant also contends that the judge erred in denying his pretrial motion to dismiss the indictments against him. He claims that the integrity of the grand jury was impaired by inconsistencies and omissions in the testimony of Detective Grice, the Commonwealth's sole witness.

Our review of the grand jury proceedings is limited to a determination of whether "the grand jury [heard] sufficient evidence to establish the identity of the accused and probable cause to arrest him." *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163-164 (1982). Probable cause requires considerably less evidence than that which is required to support a finding of guilty. *Commonwealth* v. *O'Dell*, 392 Mass. 445, 451 (1984), citing *Myers* v. *Commonwealth*, 363 Mass. 843, 848-849 (1973). Smith, Criminal Practice & Procedure § 104 (1983 ed.). However, "where the Commonwealth has failed to produce any evidence of the defendant's criminal activity, or where the Commonwealth has impaired the integrity of the grand jury by knowingly using false testimony, or by doctoring the evidence so as to give the jury a distorted picture of its probative force, a motion to dismiss the resulting indictment will lie." *Commonwealth* v. *Brien*, 19 Mass. App. Ct. 914, 914 (1994) (citations omitted). Here, the grand jury heard sufficient evidence to establish probable cause that the defendant was in constructive possession of

the drugs and weapons found in the rear bedroom.[8] Detective Grice testified that upon entering the apartment, he observed the defendant attempting to flee out the window of the rear bedroom. He further stated that a subsequent search of the room yielded 25 plastic bags of cocaine, one bag of marihuana, and three handguns. The defendant's presence, combined with his attempt to flee when police arrived to execute the warrant, was sufficient to support the grand jury's decision to indict. Cf. *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 424-427 (1985) (defendant's knowledge of contraband inferred from his attempted flight).

This is true notwithstanding the fact that Grice's trial testimony differed with respect to the defendant's precise location when he was initially observed.[9] The presentation of false or deceptive evidence to the grand jury is not, alone, enough to warrant dismissal of an indictment. *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621 (1986). The defendant must also show that the evidence was "given knowingly and for the purpose of obtaining an indictment . . . and [that the] evidence probably influenced the grand jury's determination to hand up an indictment." *Commonwealth* v. *Drumgold*, 423 Mass. 230, 235 (1996). Here, the defendant has not made such a showing.

The defendant also contends that he was prejudiced by the Commonwealth's failure to elicit from Grice the fact that a discrepancy existed between the description of the drug seller offered by the confidential informant and the defendant's actual appearance.[10] His argument is unpersuasive. The Commonwealth is not required in every instance to reveal all exculpatory evidence to the grand jury. See *Commonwealth* v. *O'Dell*, 392 Mass. at 447. Here, the omission cannot be said to have influenced the grand jury's decision to indict, where the defendant was never charged with distribution.

5. *Disclosure of the confidential informant's identity*. The defendant next argues that the motion judge and subsequently,

[8]Because we reverse the defendant's conviction for possession of the sawed-off shotgun on other grounds, we do not consider whether the grand jury heard sufficient evidence to support the indictment on that charge.

[9]At trial, Grice testified that he saw the defendant running from the rear bedroom, rather than trying to leave the building via a window in that room.

[10]The informant told Grice that the seller was between five feet four and five feet five inches tall and 20-25 years old, while the defendant is approximately five feet eleven inches tall and was 29 years old at the time of trial.

the trial judge, erred in refusing to order the prosecution to reveal the identity of its confidential informant. He contends that the informant could have provided evidence that would have been helpful to his defense. There was no error.

"Where the disclosure of a [confidential] informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the [government's] privilege [against disclosure] must give way." *Commonwealth* v. *Nelson*, 26 Mass. App. Ct. 794, 797 (1989), quoting from *Rovario* v. *United States*, 353 U.S. 53, 60-61 (1957). However, "the government is not required to disclose the identity of an informant who is . . . not an active participant in the offense charged." *Commonwealth* v. *Brzezinski*, 405 Mass. at 408, quoting from *United States* v. *Alonzo*, 571 F.2d 1384, 1387 (5th Cir.), cert. denied, 439 U.S. 847 (1978). Here, the Commonwealth correctly maintains that the defendant was never charged with the sale of cocaine, the only crime in which the informant allegedly participated. Accordingly, the defendant could not possibly have been prejudiced by the judge's refusal to order the prosecution to disclose the informant's identity.

6. *Ineffective assistance of counsel.* In his final claim of error, the defendant argues that his motion for a new trial should have been granted due to the ineffectiveness of his trial counsel. In his closing argument, defense counsel argued that the defendant "was [at the apartment] to buy drugs [but] he didn't get them; what he got was arrest for possession of these drugs with intent to distribute." The defendant maintains that counsel's concession was "tantamount to an admission of guilt" and "denuded" him of a defense. In support of his motion for a new trial, the defendant produced the affidavit of trial counsel, indicating that the defendant, who did not testify in his own behalf, "did not like the idea [of being] in any way linked with drug activity." The affidavit also indicated that defense counsel explained to the defendant that, in his opinion "the best course of defense would be to argue to the jury that he was simply there [in the apartment] to buy and/or consume drugs." In a written memorandum, the motion judge, who was also the trial judge, found that the remarks were a trial tactic designed to explain the defendant's presence in the apartment while disclaiming any possessory interest in the cocaine and firearms discovered therein, and that counsel's employment of such a tactic in

contravention of his client's wishes did not constitute ineffective assistance of counsel. We agree.

In order to support a claim of ineffective assistance of counsel, a defendant must show "serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer," and that the behavior "has likely deprived [him] of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Decisions regarding strategic or tactical matters are ultimately left to counsel, "with the degree of required client consultation and participation dependant on the circumstances." *Commonwealth* v. *Conley*, 43 Mass. App. Ct. 385, 391 (1997). When such decisions are at issue, a defendant seeking to establish a claim of ineffective assistance of counsel must show that the challenged judgment was "manifestly unreasonable." *Commonwealth* v. *White*, 409 Mass. 266, 273 (1991). Here, the defendant has made no such showing.

Defense counsel's concession that the defendant was in the apartment to purchase drugs did not, as he claims, "abdicate [his] position." It would have been utterly implausible for defense counsel to argue, as the defendant suggests, that the defendant, who was in possession of a set of keys to the apartment and who was observed partially dressed and running from a bedroom in which his identification was later found, was merely an innocent visitor waiting for the true occupant of the apartment to arrive. There was no abuse of discretion in the denial of the motion for a new trial. See *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986) (in reviewing the grant or denial of a motion for a new trial, special deference is afforded to the views of a motion judge who was also the trial judge).

The conviction for illegal possession of a sawed-off shotgun, G. L. c. 269, § 10(c), is reversed, the verdict is set aside, and judgment shall enter for the defendant on that charge. The judgments are affirmed in all other respects. The denial of the motion for a new trial is affirmed.

*So ordered.*