Commonwealth *vs.* Angel Hernandez.

No. 03-P-861.

Hampden. December 14, 2004. - May 5, 2005.

Present: Cypher, Dreben, & Katzmann, JJ.

*Practice, Criminal,* Trial of indictments together, New trial, Assistance of counsel, Jury and jurors. *Constitutional Law,* Assistance of counsel. *Jury and Jurors.*

A Superior Court judge did not abuse his discretion in declining to grant a criminal defendant's motion for a new trial, brought on the ground that his trial counsel rendered ineffective assistance in failing to consult with him concerning the question of joinder of indictments, where such a decision fell within the realm of strategic or tactical judgment and was not, in the circumstances, manifestly unreasonable and did not deprive him of an otherwise available, substantial ground of defense [430-433]; further, the defendant failed to demonstrate ineffective assistance in his counsel's failure to move for a mistrial after the judge questioned a juror who had appeared to be sleeping, where the speculative claim that the juror may have missed important testimony had no merit, in that, after questioning the juror, the judge was satisfied with the juror's assurance that he had not been sleeping and that he could concentrate on the trial [433-434].

Indictments found and returned in the Superior Court Department on December 27, 2000, and April 5, 2001.

The cases were tried before *Thomas J. Curley, Jr.,* J., and a motion for a new trial, filed on December 31, 2003, was heard by him.

*Robert A. O'Meara* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

Katzmann, J. The defendant was convicted by a Superior Court jury on indictments charging seven counts, including armed robbery and armed assault with intent to rob, arising from crimes committed at two retail stores in July and November of 2000. He filed a motion for a new trial, claiming

that he had been deprived of his constitutional right to effective assistance of counsel because counsel allegedly failed to consult with him concerning the question of joinder of indictments and because trial counsel failed to move for a mistrial after the judge noted that a juror might have been "nodding off" from time to time. The trial judge denied the defendant's motion for a new trial, and he now brings this appeal.[1] We affirm.

1. *Background.* a. *Joinder.* The defendant was charged in separate indictments arising from an armed robbery of a convenience store in Chicopee on July 9, 2000, and armed assault with intent to rob a convenience store in West Springfield on November 3, 2000.[2] The Commonwealth moved to join the indictments arising from both incidents in one trial, pursuant to Mass.R.Crim.P. 9(a), 378 Mass. 857 (1979), citing common modus operandi and arguing that the evidence with respect to each robbery would be admissible in the trial of the other. Defense counsel filed a motion, with a supporting memorandum, in opposition to joinder, arguing that the two robberies were factually unrelated and that the defendant would be unfairly prejudiced by joinder. After a hearing, the judge denied the motion for joinder and stated that the cases would proceed separately.

The Commonwealth indicated that it would elect to try the Chicopee case first. The principal evidence in that case was fingerprints found on duct tape that matched the defendant's; the Commonwealth argued that the duct tape from which the defendant's prints were taken was used to secure a Chicopee

---

[1]The defendant was convicted on November 1, 2001, and filed a notice of direct appeal. On December 2, 2003, he was granted leave to file a motion for a new trial in the trial court and to stay appellate proceedings. In a memorandum, the trial court judge denied the motion without an evidentiary hearing on February 11, 2004, and the instant appeal followed. Although the defendant's direct appeal is also before us, he only argues issues relating to the denial of the motion for a new trial.

[2]In the Chicopee indictments, the defendant was charged with armed robbery while masked, G. L. c. 265, § 17; kidnapping, G. L. c. 265, § 26; assault and battery, G. L. c. 265, § 13A. In the West Springfield indictments, the defendant was charged with armed assault with intent to rob, G. L. c. 265, § 18(*b*); assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(*b*); and assault by means of a dangerous weapon, G. L. c. 265, § 15B(*b*).

store employee during the robbery. Defense counsel informed the judge that, with respect to the Chicopee duct tape evidence, the defense theory was that that evidence had been planted by the government: that, during the course of the defendant's interrogation in November, 2000, on the West Springfield charges, a West Springfield police officer tossed the defendant the duct tape that had been retrieved in Chicopee; that the defendant grabbed it, and that the Commonwealth thus obtained the defendant's fingerprints on the duct tape. The judge, noting that the defendant was entitled to put on this defense, which implicated the November West Springfield incident, also determined that reconsideration of his ruling denying joinder was warranted.

Given that an essential aspect of the defense to the Chicopee robbery required admission of evidence arising from the November episode, the judge determined that the Commonwealth should also be able to introduce evidence regarding this episode; hence, joinder was appropriate. Without joinder, and given that the Commonwealth had elected to try the Chicopee case first, the judge stated he would "end up trying largely the same case twice," as trial of the West Springfield case would follow the Chicopee case. The judge also indicated that he would instruct the jury that they should consider the two robberies separately and that the jury should not infer from their consideration of one robbery that the defendant was more likely to commit the other. Notwithstanding the judge's ruling, defense counsel continued to press that the cases be tried separately and that the November case be tried first.

That morning, immediately following the judge's ruling on joinder, a jury was selected and the trial began, concluding two days later. With respect to the Chicopee charges case, the evidence centered on the robbery of an employee at the convenience store on July 9, 2000. The employee testified that she was grabbed from behind by a man with a knife who threatened to kill her. She said that the man wore glasses, a mask, and wrapped duct tape around her eyes, nose, mouth, wrists, and ankles. She said that the man took cash from her pocketbook and the register and fled the store. She described the robber's height, build, and accent. She could not identify

the defendant as the robber. Fingerprints matching the defendant were found on the duct tape used to secure the employee. Only one perpetrator was involved.

With respect to the West Springfield charges, including armed assault with intent to rob and related allegations, the evidence centered on the events at a convenience store on November 3, 2000. A store employee said that a friend who was visiting him there was attacked by a big man with a mask and knife; the employee also noticed a thinner masked man with a knife in the storage room. After striking the attacker and freeing his friend, the employee sounded the store alarm. A West Springfield police officer, William Dolan, responded to the report of the alarm at the convenience store. As he entered the parking lot, he saw two men, one of whom was injured. The two men ran and were pursued and intercepted by Dolan and another police officer. Dolan stated that both men had knives; in court, he identified the larger man as the defendant. The thinner man had a backpack which contained masks, a knife, tape, latex gloves, and cords. Both men were arrested.

In his defense, as previewed by his counsel at the hearing on joinder, the defendant testified that he was never present at the Chicopee store, that he was not there on July 9, 2000, and that he was never involved in a robbery. He alleged that his fingerprints were only present on the duct tape because a West Springfield police officer, not Officer Dolan, tricked him into touching the tape while questioning him about the subsequent West Springfield robbery. He testified that, while he was being questioned, the police officer threw a roll of duct tape toward his face, that he caught it, and that the police officer said, "I got you." Defense counsel argued in closing that the roll of tape, which was included in the evidence collected from the Chicopee robbery, was a part of a police-orchestrated attempt to frame the defendant. With respect to the West Springfield charges, the theme of the defendant's testimony was that he had been simply shopping in the store and that he was the victim of a grave misunderstanding.

During the trial, and in his charge to the jury, the judge instructed the jury that they were not to consider evidence from either the Chicopee or the West Springfield incidents as demon-

strating the propensity of the defendant to commit the crime in the other case.

b. *The juror.* During the testimony of the first witness, the judge called a recess in order to question a juror who the judge noticed "had his head in his hands for the large part of the proceedings" and who appeared to the judge "to be nodding off at various points." The juror explained that he was simply feeling "a little nauseous," but that he was able to concentrate and to pay attention. The juror was provided with water. The judge told the juror that "[i]f anything comes up . . . where you don't feel well, you don't think you can concentrate, I want you to tell me or the court officer, okay." The trial continued. The defendant argues that his attorney was ineffective for not requesting a mistrial, or at least asking for a replacement juror, on the basis that a juror had been sleeping and had missed potentially important evidence.

2. *Discussion.* A motion for a new trial may be allowed "at any time if it appears that justice may not have been done." Mass.R.Crim.P.30(b), as appearing in 435 Mass. 1501 (2001). We review a motion judge's decision "only to determine whether there has been a significant error of law or other abuse of discretion." *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). See *Commonwealth* v. *Lo*, 428 Mass. 45, 53 (1998). Moreover, "[i]n reviewing the grant or denial of a motion for a new trial, [a reviewing court] will grant special deference to the views of a motion judge who was also the trial judge." *Commonwealth* v. *Haley*, 413 Mass. 770, 773 (1992). Here, the motion judge, who was also the trial judge, did not abuse his discretion in denying the defendant's motion for a new trial based on ineffective assistance of counsel.

To prevail on a claim of ineffective assistance, the defendant generally must prove that the "behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer" and that this failure cost the defendant a "substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Where the claim involves a "strategic" or "tactical" decision on the part of the attorney, the defendant must show that the decision was "manifestly unreasonable." *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). *Com-*

monwealth v. *Donlan*, 436 Mass. 329, 333-334 (2002). See *Commonwealth* v. *Finstein*, 426 Mass. 200, 203 (1997). *Commonwealth* v. *Gonzalez*, 443 Mass. 799, 809 (2005). The defendant does not carry his burden on either of the asserted bases that counsel was ineffective.

The defendant's primary contention is that his attorney's "failure to consult" with him before explaining to the judge that she would need to introduce evidence from the second robbery as part of the defense of the first, was ineffective assistance. The short answer to that claim is that, in most instances, an attorney has no duty to stop and consult with his or her client immediately before each tactical decision of counsel. Central to our criminal justice system is the principle that a defendant is entitled to a fair trial and that he or she be provided effective assistance of counsel to ensure that this right is protected. Our jurisprudence recognizes that there is a continuum of decisions and locus of responsibility in "the control and direction of a case." American Bar Association (ABA) Standards for Criminal Justice Defense Function § 4-5.2 (3d ed. 1993). There are, however, certain decisions that are so "fundamental" and so "personal" that they rest ultimately with the defendant. *Commonwealth* v. *Donlan*, 436 Mass. at 334-335 & n.6. *Commonwealth* v. *Conley*, 43 Mass. App. Ct. 385, 391 (1997). These decisions include the decision "whether to plead guilty, to waive the right to trial by jury, to testify in one's behalf, to take an appeal, or to waive the right to counsel." *Ibid.* There are other decisions, however, "often called strategic or tactical matters, [that] rest ultimately in counsel, with the degree of required client consultation and participation dependant on the circumstances." *Ibid. Commonwealth* v. *Segovia*, 53 Mass. App. Ct. 184, 190 (2001). See *Commonwealth* v. *Amirault*, 424 Mass. 618, 645 n.19 (1997). These strategic or tactical decisions, such as "what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions to make," ABA Standards for Criminal Justice Defense Function § 4-5.2, at 200, reflect the unique training and professional experience which are the province of the attorney. See, e.g, *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. 502, 511-512 (1998) (decision, against client's wishes, to concede that he

intended to purchase but not sell drugs, was strategic); *Commonwealth* v. *Gonsalves*, 56 Mass. App. Ct. 506, 513 (2002), *S.C.*, 442 Mass. 1016 (2004) (intentional choice by attorney to base defense on one issue and not another is "strategic choice"). Decisions regarding joinder fall within the realm of strategic or tactical judgment. See, e.g., *United States* v. *Bear Stops*, 204 F. Supp. 2d 1209, 1231 (S.D. 2002), cert. denied, 540 U.S. 1094 (2003); *People* v. *Peterson*, 656 P.2d 1301, 1304 (Colo. 1983). See also ABA Standards for Criminal Justice Joinder and Severance § 13, Introduction at 5 (2d ed. 1982).

Categorizing decisions as "tactics" or "strategy" does not "render the[se] decisions immune from scrutiny," *Commonwealth* v. *Conley*, 43 Mass. App. Ct. at 391; however, they will not be considered ineffective assistance unless they were "manifestly unreasonable." *Id.* at 392, quoting from *Commonwealth* v. *White*, 409 Mass. 266, 273 (1991). *Commonwealth* v. *Segovia*, 53 Mass. App. at 194. Hence, the simple fact that the defendant's attorney did not stop the hearing and discuss her evidentiary strategy with him does not make her assistance ineffective. To decide the reasonableness of his attorney's strategy, we must conduct a " 'discerning examination and appraisal' of the factual circumstances of the case" as a whole. *Conley, supra* at 386, quoting from *Saferian*, 366 Mass. at 96. A review of those facts shows the defendant has misinterpreted the record.

Specifically, the defendant first states that he had insisted that his counsel oppose joinder of the two cases against him. She, in fact, did just that and initially prevailed. The defendant does not deny that his defense to the Chicopee robbery from the beginning had been that his fingerprints were only present as the result of an attempt by police to frame him. He does not suggest that he did not want his attorney to present the only defense he had to the Chicopee robbery. Indeed, his testimony laid the groundwork for the police conspiracy theory argued by counsel in closing. It was thus perfectly consistent with the defendant's wishes for his attorney to oppose joinder, while at the same time requesting permission to present evidence necessary to support the claim of a conspiracy. There was no change in strategy whatsoever, let alone one that required consultation

with the defendant. It was appropriate and in keeping with defense counsel's obligations as an officer of the court that, having prevailed initially in opposing joinder, she alerted the judge that she would be seeking to adduce evidence concerning the West Springfield incident in the Chicopee case. We note that, even after the judge reconsidered his ruling, defense counsel continued to oppose joinder.[3] It is difficult to discern what else defense counsel might have done.

Moreover, even if we were to assume that defense counsel's actions were "manifestly unreasonable," or even that she had acted "measurably below that which might be expected from an ordinary fallible lawyer" by "failing to consult" with him on her strategy, the defendant cannot show that counsel's failure "has likely deprived [him] of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. at 96. We note that the defendant incorrectly asserts that, but for the joinder of the two trials, the Commonwealth would not have been able to link him to the Chicopee robbery. This, he states, is because the set of fingerprints from the duct tape found at the Chicopee robbery would not have been admitted. The record does not support this contention. As the judge noted in denying the motion for a new trial, the fingerprints were part of the Chicopee evidence, not the West Springfield evidence, and there was no reason to exclude them even if the circumstances attending his arrest in West Springfield were excluded.

We also agree with the trial judge that the defendant's trial attorney was not ineffective for failing to request a mistrial after the judge's questioning of the juror. Absent from the record is any mention of a juror actually being asleep. The trial judge

---

[3]While permitting the Chicopee and West Springfield incidents to be tried together, the judge, as noted above, also indicated that he would issue limiting instructions directing that the jury consider each incident independently and not make determinations based upon propensity to commit a crime. The judge issued those instructions both during the admission of evidence and in the jury charge. The defendant must show not only that he was prejudiced by joinder, but also that the resulting prejudice was not cured by the judge's instructions. *Commonwealth* v. *Shelton*, 37 Mass. App. Ct. 964, 964 (1994). Absent any contrary evidence, jurors are presumed to follow the judge's instructions. *Commonwealth* v. *Lynch*, 439 Mass. 532, 544, cert. denied, 540 U.S. 1059 (2003). There is no reason to believe that the jury here did not follow the judge's forceful instructions.

stated that the juror "appear[ed] to be nodding off." After questioning, however, the juror explained that he simply was "a little nauseous" and could concentrate. The judge accepted this explanation. Neither attorney noticed the juror sleeping. In his memorandum and order denying the motion for a new trial, the judge noted that, although he did not have an independent memory of these events, it was his "regular practice" to make inquiry "as soon as [any] juror's behavior raises any concern." It is appropriate to defer to a judge's "customary practice." *Commonwealth* v. *Ashmon*, 434 Mass. 1005, 1006 (2001), quoting from *Commonwealth* v. *Rzepphiewski*, 431 Mass. 48, 54 (2000). The judge found that he "[a]t least implicitly . . . credited" the juror's assurance "that he was able to concentrate and pay attention to the evidence" and that "neither lawyer saw reason for further inquiry." The judge was satisfied with the juror's assurance that he could concentrate and pay attention. The defendant's speculative claim that the juror may have missed important testimony has no merit. The "judge was in a superior position to observe and assess the juror's demeanor." *Commonwealth* v. *Francis*, 432 Mass. 353, 369 (2000). In sum, dismissal of the juror or declaration of a mistrial was not warranted. The trial judge did not abuse his discretion in denying the motion for a new trial.

> *Judgments affirmed.*
>
> *Denial of motion for new trial affirmed.*