## COMMONWEALTH vs. TWANESHA HILL.

No. 99-P-1388.

Hampden. November 9, 2000. - May 21, 2001.

Present: LAURENCE, SMITH, & GILLERMAN, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure, Probable cause, Arrest. *Search and Seizure,* Warrant, Automobile, Probable cause, Arrest. *Probable Cause.*

Testimony and other evidence presented to a grand jury were sufficient to establish probable cause on indictments charging the defendant with cocaine possession with intent to distribute and cocaine possession with intent to distribute in a school zone. [602-603]

Evidence presented to a grand jury was not sufficient to establish that the defendant had probably possessed a firearm or ammunition without an identification card, actually or constructively, and the indictment charging that offense was properly dismissed. [604]

The judge in a criminal case properly allowed the defendant's motion to suppress evidence seized by the police during a warrantless search of her person and of an automobile in which she was riding where, absent adequate corroboration, a tip by a confidential informant did not demonstrate sufficient indicia of reliability to give rise to a finding of probable cause either to arrest the defendant or to search her, and where, on the evidence available to the police at the time of the arrest and search, the police did not have probable cause to stop the defendant's automobile, to arrest her, or to believe that the automobile in which she was riding contained contraband. [604-610]

The judge in a criminal case erred in refusing to suppress a quantity of cash, ammunition and other items seized in the search of the defendant's apartment and the cellar of the building in which the apartment was located, where information obtained by the police during a warrantless search of her person and her automobile in violation of the defendant's constitutional rights, even if in good faith, could not be considered in the determination of probable cause and could not support the issuance of a warrant to search the apartment and cellar. [610-612]

INDICTMENTS found and returned in the Superior Court Department on September 28, 1994.

Pretrial motions to dismiss and to suppress evidence were heard by *C. Brian McDonald, J.*

Applications for interlocutory appeal were allowed by *Ruth I. Abrams.* J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by her to the Appeals Court.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

*William R. Hill, Jr.,* Committee for Public Counsel Services, for Twanesha Hill.

LAURENCE, J. Twanesha Hill was indicted, along with another individual, Corey Hightower, for possession of cocaine with intent to distribute (in violation of G. L. c. 94C, § 32A), such possession and intent within a school zone (in violation of G. L. c. 94C, § 32J), and possession of "a firearm or ammunition" without an identification card (in violation of G. L. c. 269, § 10[*h*]). Hill filed pretrial motions to dismiss the indictments against her; to suppress items discovered by the police during a warrantless search of her person and of an automobile in which she was riding; and to suppress other items subsequently seized from her apartment in execution of a search warrant.

Following a combined evidentiary hearing on the several motions, a Superior Court judge allowed Hill's motion to dismiss the indictments and her motion to suppress the fruits of the warrantless search, but denied her motion to suppress the evidence obtained from the search of her apartment. A single justice of the Supreme Judicial Court allowed the Commonwealth's applications for interlocutory appeal of those rulings and reported the appeal to this court for determination. See Mass.R.Crim.P. 15(a)(1) & (2), as appearing in 422 Mass. 1501-1502 (1996).[1] We reverse the allowance of Hill's motion to dismiss the indictments for possession of cocaine with intent to distribute and such possession and intent to within a school zone, but affirm the allowance dismissing the indictment for possession of a

---

[1]Hill did not apply for interlocutory appeal from the denial of her motion to suppress the items seized from her apartment, nor does the record indicate that she filed a motion to dismiss the Commonwealth's appeal or a memorandum in opposition to that appeal. See note 11, *infra.* The same appears true for Hightower (who had joined with Hill on the motions to suppress). Hightower neither submitted a brief nor otherwise appeared in the instant proceeding. Accordingly, this opinion does not address any questions or issues relating to Hightower. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); Mass.R.A.P. 19(c), 365 Mass. 868 (1974).

firearm or ammunition. We affirm the allowance of Hill's motion as to the warrantless search of the automobile and reverse the denial of her motion as to the search of her apartment.

1. *Background facts.* The motion judge made the following findings, after the combined hearing (the evidence at which consisted of the testimony of Springfield police officers Jackson, Santaniello, and Trites, along with the search warrant and supporting affidavit and the grand jury transcript). The Springfield police department had, at some unspecified time, received reports from several different, unnamed sources that one side of a two-story duplex house at 16 Gold Street was a distribution point for crack cocaine. Hill and Hightower were allegedly dealing cocaine from that apartment by using a "beeper system" to communicate with customers and delivering cocaine to customers in a red Plymouth Neon automobile. In addition, some customers were allowed to enter the apartment to purchase cocaine. One of the anonymous sources claimed to have been, at an indeterminate time or times, inside the apartment and to have witnessed an undisclosed number of drug sales involving Hill and Hightower and the placement of orders for cocaine (inferentially by the beeper system). One of the sources was said to be a "confidential informant" who on prior occasions had supplied officer Jackson with information, which Jackson had "corroborated." Jackson did not, however, describe the dates or the nature of that information, nor the manner in which it had been corroborated. The confidential informant was not identified as the source who had allegedly witnessed drug transactions inside the apartment.

After receiving this information, Jackson and fellow-officer Santaniello began conducting surveillance of the suspect address. The officers were aware that Hill had been convicted four years earlier for possession of cocaine with intent to distribute and trafficking in cocaine and that Hightower had been previously arrested for possession of some sort of handgun without a permit. Over about a two-week period prior to June 10, 1994, they confirmed that Hill and Hightower were in residence and watched them come and go in the red Neon. They also observed ten instances where unknown individuals entered the apartment, remained a short time, then departed.

Short visits of that type were consistent with transactions involving the sale of narcotics. The ten instances did not, however, involve ten different individuals, and none of the individuals seen entering the apartment was known to the officers as having been involved in drug activity. The officers did not ascertain whether either Hill or Hightower was present during those ten visits.

On June 10, 1994, at a time when the red Neon was parked nearby, the two officers observed an automobile containing a female passenger known to Jackson as Mari Werner arrive at 16 Gold Street. Werner entered the apartment for a "short time," returned to the vehicle, and drove away. Jackson knew that Werner had been arrested the previous week, found in possession of cocaine, and charged with possession with intent to distribute cocaine. Jackson and Santaniello followed Werner's vehicle, stopped it at a nearby intersection, and ordered the occupants out. Asked if she had any cocaine in her possession, Werner admitted that she did and surrendered four plastic bags containing what appeared to be cocaine. Werner did not, however, admit or state that she had obtained the cocaine at 16 Gold Street. She was then arrested and transported to police headquarters.

The circumstances of Werner's arrest were communicated to additional police officers, including Sergeant Trites, who took up surveillance at 16 Gold Street. The surveilling officers observed Hill and Hightower leave the apartment "shortly after" Werner was arrested and drive away in the red Neon. Trites and the other officers followed the red Neon into the parking lot of the Glenwood Elementary School (which, testimony revealed, was attended by Hill's son). Trites positioned his vehicle behind the Neon, while another police vehicle "box[ed it] in" from the front. Trites did not speculate that the Neon contained cocaine; rather, aware that a warrant application to search the suspects' apartment was in progress, he intended to detain and question them until the warrant issued.

The officers left their vehicle and approached the Neon in plain clothes. They displayed their badges, but did not draw their weapons. Hightower, the driver, looked shocked and "made a quick motion towards the console" area of the

automobile. (This movement did not, however, provoke safety fears on the part of the officers.) Trites, looking through the driver's door window, saw, "in plain view," the corner of a plastic bag in the area between the driver's seat and the console. He knew that such a plastic bag was a common container for narcotics. Hill and Hightower were ordered out of the Neon. Trites retrieved the plastic bag, which contained three additional plastic bags, each containing a substance that appeared to be cocaine. The officers then searched Hill and Hightower; each had about $400 in cash, and Hill had a "pager". Both were arrested.

Upon receiving this information and an affidavit from Santaniello, a clerk magistrate issued a warrant for the search of the 16 Gold Street apartment for cocaine and related paraphernalia. During the search of the apartment, police recovered personal papers belonging to Hill and Hightower, bank books, identification cards, pictures, and $6,000 in cash inside a pair of men's sneakers in a bedroom. "In the cellar of 16 . . . Gold Street," officers found "128 rounds of ammunition, one clip and clip feeder, and one empty gun container."[2]

2. *Sufficiency of the indictments.* Relying on *Commonwealth v. McCarthy*, 385 Mass. 160 (1982), the judge dismissed Hill's indictments after concluding that the Commonwealth had failed to present to the grand jury sufficient evidence to suggest that Hill was at any time in actual or constructive possession of the drugs or ammunition at issue. Accordingly, he ruled that the grand jury lacked probable cause to believe that Hill had committed a crime.

Under the applicable principles,[3] we are satisfied that the testimony and other evidence presented to the grand jury were

___

[2]These findings as to the results of the search combine findings from the rulings on the motions to suppress and to dismiss, which, as noted above, were heard together. Also as noted above, the judge's findings have not been contested or shown to be clearly erroneous and are, therefore, binding on us, although we independently weigh his application of constitutional principles to the facts found. *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 538-539 (1990).

[3]"Generally, a court will not inquire into the competency or sufficiency of the evidence before the grand jury." *Commonwealth* v. *Coonan*, 428 Mass. 823, 825 (1999). An indictment valid on its face should not be dismissed absent a showing that "the grand jury proceeding prejudiced [the defendant's]

sufficient to establish probable cause on the indictments charging Hill with cocaine possession with intent to distribute and cocaine possession with intent to distribute in a school zone. The grand jury heard evidence that Hill — a convicted drug dealer identified as continuing in the cocaine distribution business by a police informant claiming personal knowledge — was at least inferentially present when a known drug user and suspected dealer visited her building; that following that visitor's arrest immediately after leaving 16 Gold Street, the police found cocaine in the visitor's possession; that Hill and Hightower left the apartment shortly after the user's arrest and proceeded in a car to a schoolyard; that at the schoolyard during a search, police found in that car a substantial amount of cocaine packaged for resale, found in Hill's possession a common accoutrement of the drug trade (a pager), as predicted by the informant, and a significant amount of cash, and also found in Hightower's possession a significant amount of cash; and that in her apartment the police discovered a very large stash of cash.

The totality of that evidence warranted a person of reasonable caution to conclude that Hill had probably committed the charged drug offense (contrast *McCarthy*, 385 Mass. at 163 [*no evidence of criminality presented to grand jury*]), in that, she could be rationally deemed to have had actual or constructive possession of the cocaine seized from her car and to have intended to distribute it within a school zone. See *Commonwealth* v. *Collado*, 426 Mass. 675, 679-680 (1998); *Commonwealth* v. *Francil*, 15 Mass. App. Ct. 35, 37 (1982); *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. 502, 509-510 (1998). The judge erred in dismissing those two indictments.[4]

ability to obtain a fair trial." *Commonwealth* v. *Freiberg*, 405 Mass. 282, 301, cert. denied, 493 U.S. 940 (1989). That the indictment issued solely on the basis of hearsay evidence, or even on the basis of information obtained in an unconstitutional manner, is not sufficient to invalidate it. *Ibid.* "[A]t the very least[, however,] the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him . . . ." *Commonwealth* v. *McCarthy*, 385 Mass. at 163. The "requirement of sufficient evidence to establish these two facts is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." *Commonwealth* v. *Caracciola*, 409 Mass. 648, 650 (1991) (citation omitted).

[4]The issue whether such evidence would be sufficient to convict Hill of the crimes charged beyond a reasonable doubt is, of course, not before us.

The same cannot be said of the indictment charging Hill with unlawful possession of the ammunition seized from the cellar at 16 Gold Street. The Commonwealth failed to present evidence that the cellar was part of Hill's apartment or of the common area of the building, or that Hill controlled or exercised dominion over the cellar in any manner. The Commonwealth introduced nothing indicating that Hill had at any time been present in the cellar or was aware of its contents. Neither did the Commonwealth claim to have found in the cellar any item identifiably belonging to or associated with Hill, such as personal papers or effects, or otherwise connecting her to the cellar. Nor was there any evidence that Hill had ever acquired or possessed or been seen with any ammunition or firearms.[5] In short, the Commonwealth failed to present to the grand jury any evidence from which a person of reasonable caution could conclude that Hill had probably possessed the ammunition at issue, actually or constructively, and the indictment charging that offense was properly dismissed. See and compare *Commonwealth* v. *McCarthy*, 385 Mass. at 163-164; *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. 629, 636-637, 640-641 (1997); *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. at 509-510; *Commonwealth* v. *Tam*, 49 Mass. App. Ct. 31, 38 (2000); *Commonwealth* v. *Delarosa*, 50 Mass. App. Ct. 623, 628 (2000).

3. *Motion to suppress evidence from the warrantless searches.* A search is presumed unreasonable unless conducted under the authority of a valid warrant supported by a showing of probable cause. *Katz* v. *United States*, 389 U.S. 347, 357 (1967). *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975). The searches of Hill and her car were not performed under the auspices of a warrant. Nonetheless, the Commonwealth (which has the burden of proof in such situations, see *Commonwealth* v. *Phillips*, 413 Mass. 50, 55 [1992]) asserts that they were valid under two

Compare *Collado*, *supra* at 680 n.8; *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 438-439 (1991); *Commonwealth* v. *Brown*, 34 Mass. App. Ct. 222, 225-227 (1993) (mere presence of drugs in defendant's apartment and defendant's association with a dealer do not support conviction).

[5]The grand jury did not hear any evidence regarding Hightower's 1993 arrest for unlawful possession of a handgun. The record does not reveal either the type of handgun involved or the caliber of the ammunition found in the cellar.

theories recognizing exceptions to the general principle: first, that the search of the car was conducted incident to Hill's and Hightower's lawful arrest, see G. L. c. 276, § 1; and alternatively, by virtue of the so-called automobile exception. See *Commonwealth* v. *Motta,* 424 Mass. 117, 122-124 (1997). Finding no probable cause for either the arrest or for application of the automobile exception, we agree with the judge's ruling allowing Hill's motion to suppress the evidence seized in the warrantless search of her and the car.

A search incident to an arrest is generally valid provided the police have probable cause to arrest, see *Commonwealth* v. *Peters,* 48 Mass. App. Ct. 15, 21-22 (1999), and the search does not exceed a permissible scope. G. L. c. 276, § 1. "Probable cause to arrest exists when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime." *Commonwealth* v. *Gullick,* 386 Mass. 278, 283 (1982). Similarly, for a search to be valid under the automobile exception, the officers must have had probable cause to believe that the car contained contraband (although no particular exigency beyond the inherent mobility of a motor vehicle need be shown). See *Commonwealth* v. *Motta,* 424 Mass. at 122-123; *Commonwealth* v. *Watson,* 430 Mass. 725, 733 (2000).

The Commonwealth contends that the evidence summarized at 600-602, *supra,* particularly the confidential informant's tip and the Werner incident, provided the police with probable cause to arrest Hill and Hightower and to search their car under both exceptions to the warrant requirement.[6] We disagree. Probable cause may be based on an informant's tip, but the prosecution must establish that the tip was trustworthy, i.e., that it bore such indicia of reliability that one acting upon it can "know that he is relying on something more substantial than a casual

---

[6]The judge below, as well as both Hill and the Commonwealth here, proceeded on the assumption that the police arrested Hill and Hightower when they boxed in the car and ordered its occupants out and did not merely stop the car for a threshold inquiry upon reasonable suspicion that the occupants had committed or were about to commit a crime. Compare *Commonwealth* v. *Martinez,* 44 Mass. App. Ct. 513, 516-517 & nn. 2 & 3 (1998); *Commonwealth* v. *Hall,* 50 Mass. App. Ct. 208, 210-211 (2001).

rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli* v. *United States*, 393 U.S. 410, 416 (1969).

A tip will be deemed trustworthy only if it satisfies the *Aguilar/Spinelli*[7] criteria of reliability; it must set forth "(1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable' (the veracity test)." *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985). If the informant's tip fails either aspect of the *Aguilar/Spinelli* test, other information reasonably known to or acquired by the police that corroborates the tip may support a finding of probable cause; but "each element of the test must be separately considered and satisfied or supplemented in some way." *Id.* at 376.

Applying the *Aguilar/Spinelli* standards here, we conclude, as did the judge below, that the tip from the confidential informant was unreliable. Despite the lack of detail and precision in the tip, contrast *Commonwealth* v. *Robinson*, 403 Mass. 163, 166 (1988); *Commonwealth* v. *Cast*, 407 Mass. 891, 892 (1990); *Commonwealth* v. *Welch*, 420 Mass. 646, 651-652 (1995), we accept the judge's conclusion that, because the informant allegedly saw and was present when Hill and/or Hightower took drug orders in the apartment, the informant demonstrated an adequate "basis of knowledge," so that the first prong of the *Aguilar/Spinelli* formula was satisfied. See *Commonwealth* v. *Parapar*, 404 Mass. 319, 322 (1989) (statement of informant that he obtained drugs three times from same person in specific apartment allows clear inference of personal observation). The informant's "veracity," however, was fatally deficient.

Our initial concern is that the informant failed to indicate when any observed illegal activity had taken place, what exactly had happened, how often (and recently) the informant had observed this activity, or what the informant's role in such activity had been. As the Commonwealth conceded at argument,

---

[7]See *Aguilar* v. *Texas*, 378 U.S. 108 (1964); *Spinelli* v. *United States*, 393 U.S. 410 (1969).

such a dearth of both temporal and substantive detail does not provide an adequate basis for us to determine whether the information provided by the informant is sufficiently veracious to justify an invasion of Hill's constitutionally protected zone of privacy. Compare *Commonwealth* v. *Upton,* 394 Mass. at 377-378; *Commonwealth* v. *Malone,* 24 Mass. App. Ct. 70, 73-74 (1987) (several isolated incidents of selling drugs fourteen months, one month, and two weeks prior to informant's tip constituted stale information insufficient to establish probable cause); *Commonwealth* v. *Morton,* 26 Mass. App. Ct. 949, 950 (1988) (failure of informant to specify time of observations constitutes a "serious defect" militating against finding of probable cause); *Commonwealth* v. *Oliveira,* 35 Mass. App. Ct. 645, 648 (1993) (even a highly detailed tip would not serve to satisfy the veracity requirement).

A more significant defect impairs the reliability of the informant's tip. Although the informant allegedly had provided useful information on prior occasions, the Commonwealth did not indicate (as the judge noted) what the nature of that other information was or when or in what context it had been provided or verified. Further, there was no showing that the information had led to any convictions, seizures of contraband, or even arrests. "Boiler plate" assertions lacking such substantive detail are not adequate to satisfy *Aguilar/Spinelli*'s veracity prong. See and compare *Commonwealth* v. *Rojas,* 403 Mass. 483, 486 (1988); *Commonwealth* v. *Lapine,* 410 Mass. 38, 41-42 (1991); *Commonwealth* v. *Meija,* 411 Mass. 108, 113-114 (1991); *Commonwealth* v. *Santana,* 411 Mass. 661, 664-665 (1992); *Commonwealth* v. *Byfield,* 413 Mass. 426, 431 (1992).

Nor did the police investigation and surveillance corroborate the informant's tip in any meaningful manner. As the judge found, prior to the arrest the police had confirmed only that Hill and Hightower resided at the identified residence and owned or operated a car fitting the informant's description, that Hill some four years earlier had been convicted of possession of cocaine with intent to distribute, and that one known drug user/dealer who had just visited the building was found in possession of cocaine. Significantly, the police observed no actual drug transactions and at best minimal foot traffic, involving unidenti-

fied persons, during their two-week surveillance. The officers did not see either Hill or Hightower using any "beepers" or other drug paraphernalia or engaging in any activity more suspicious than taking short motor trips away from their residence, to destinations unknown and for purposes uncertain. Indeed, the officers were unable to testify that the persons who infrequently visited the building (none of whom the police followed upon their departure) had at any time in fact met with Hill.

Because the information supposedly corroborated by the police was essentially such as was commonly available and as consistent with Hill's innocence as with criminal activity, it does not constitute adequate corroboration under *Aguilar/ Spinelli*. See *Commonwealth* v. *Helme*, 399 Mass. 298, 301 (1987) ("[t]oo many alternative explanations, all of them innocent, exist which could explain the facts as presented to the officer and negate any suspicion that 'a person has committed, is committing, or is about to commit a crime' "); *Commonwealth* v. *Alvarado*, 423 Mass. 266, 272-274 (1996) (corroboration of innocent details insufficient to satisfy veracity prong); *Commonwealth* v. *Motta*, 34 Mass. App. Ct. 921, 922 (1993) (confirmation of name and address provided by informant is not sufficient to satisfy veracity prong). Neither the fact of Hill's four year old drug conviction nor the arrest of Hightower on a weapons charge added corroborative verisimilitude to the informant's story. See *Commonwealth* v. *Allen*, 406 Mass. 575, 579 (1990); *Commonwealth* v. *Oliveira*, 35 Mass. App. Ct. at 647. In sum, nothing observed by or known to the police adequately corroborated any of the inculpatory assertions attributed to the informant.

The Commonwealth stresses that the circumstances surrounding Werner's arrest corroborated the tip and were sufficient to clothe the search with probable cause. We are unpersuaded. When arrested shortly after visiting Hill's building, Werner admitted that she had cocaine in her pockets, but the officers did not establish when or from whom Werner had obtained the cocaine.[8] Since Jackson testified that Werner was a known substance abuser and dealer, her possession of cocaine could as

---

[8]Jackson testified at the suppression hearing that Werner had admitted to him that she had just obtained the cocaine at 16 Gold Street and that the

likely be attributed to events and persons wholly unrelated to Hill or Hightower as to any illegal activities in which they might have been engaged.[9] Though manifestly indicative of criminal activity on Werner's part, the circumstances of Werner's arrest were no more consistent with Hill's guilt than with her innocence. The Werner incident, therefore, was insufficient to elevate the tip above the level of "a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli* v. *United States*, 393 U.S. at 416. See *Commonwealth* v. *Frazier*, 410 Mass. 235, 240 (1991) (mere association with cocaine dealer, without more, does not provide probable cause to arrest associate or to search associate's handbag); *Commonwealth* v. *Sampson*, 20 Mass. App. Ct. 970, 971 (1985) (observation of defendant seated next to gaming suspect who acted furtively on seeing officer not sufficient to give rise to probable cause to believe defendant engaged in illegal gambling). Cf. note 4, *supra.*

In the absence of adequate corroboration, the informant's tip did not demonstrate sufficient indicia of reliability to give rise to a finding of probable cause either to arrest Hill or search her. See *Commonwealth* v. *Rojas*, 403 Mass. at 486. Disregarding the informant, at the time of the arrest and search the police collectively knew (see *Commonwealth* v. *Gullick*, 386 Mass. at 283) the following: (1) Hill and Hightower resided in an apartment at 16 Gold Street and operated a certain car; (2) over a two week period, ten, though probably fewer, persons made short visits to the apartment; (3) a known drug user and dealer visited the apartment building on one occasion for a brief period

confidential informant had fingered Werner as one of the persons able to purchase cocaine inside the 16 Gold Street apartment. The motion judge did not accept this testimony, noting that the informant was never identified as the source who claimed to have actually witnessed drug transactions inside the apartment; omitting those facts from his findings as to the relevant collective knowledge of the police at the time they boxed in Hill's car; and expressly declaring Jackson's testimony regarding Werner's alleged admission as neither accurate nor creditable.

[9]Notably absent in the instant case is any effort by the police to orchestrate a controlled purchase of drugs from the suspect's apartment, by the informant or an undercover officer, which is one of the most significant means of corroboration of an otherwise unverified tip. See *Commonwealth* v. *Warren*, 418 Mass. 86, 89-90 (1994); *Commonwealth* v. *Desper*, 419 Mass. 163, 168 (1994); *Commonwealth* v. *Richardson*, 37 Mass. App. Ct. 482, 486-487 (1994).

and later was found to have cocaine on her person; (4) Hill and Hightower left their apartment after the drug dealer was arrested and drove to a schoolyard; (5) after being "boxed in" by the police in the schoolyard (not described as a high-crime area or scene of drug activity), Hightower "made a move" toward the console area of the car (though the occupants did nothing to create police concern for their safety); and (6) an officer saw a portion of a plastic bag peeking out of the area between the console and the driver's seat.[10]

We concur with the judge in concluding that, on this evidence, the police did not have probable cause to stop Hill's car, to arrest her, or to believe that the car in which she was riding contained contraband. See *Commonwealth* v. *Frazier*, 410 Mass. at 240; *Commonwealth* v. *Alvarado*, 420 Mass. at 555; *Commonwealth* v. *Sampson*, 20 Mass. App. Ct. at 971; *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. at 650. Compare and contrast *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992) (suspect in high-crime area engaged in furtive, transaction-like conduct with another; sufficient probable cause for experienced officer to arrest for drug sale); *Commonwealth* v. *Rivera*, 27 Mass. App. Ct. 41, 42, 45 (1989) (probable cause to arrest for drug possession when, as officers approached in a high-crime area, suspect shoved plastic baggy into pants); *Commonwealth* v. *Peters*, 48 Mass. App. Ct. 15, 21 (1999) (search incident to arrest valid where police saw defendant, in the presence of female companion, engage in drug transaction and where female companion acknowledged that she had drugs in her pocket). We agree with the judge's rejection of the Commonwealth's effort to validate the search of Hill's car and person as either incident to a lawful arrest or as an automobile search and see no error in his ordering suppressed the cocaine and other materials seized as a result of the warrantless searches.

4. *Motion to suppress products of the building search.*

---

[10]Police observation of Hightower's "move" toward the console area and of the corner of a plastic sandwich bag in plain view are not factors that provide or enhance probable cause to search on the instant record. See *Commonwealth* v. *Kaufman*, 381 Mass. 301, 304-305 (1980); *Commonwealth* v. *Sergienko*, 399 Mass. 291, 295-297 (1987); *Commonwealth* v. *Santiago*, 410 Mass. 737, 745 (1991); *Commonwealth* v. *Alverado*, 420 Mass. at 555; *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. at 650.

Although we could decline to consider Hill's appellate contention that the judge erred in refusing to suppress the cash, ammunition and other items seized in the search of her apartment and the cellar at 16 Gold Street,[11] we address the issue, not only because the parties have fully briefed it, but also because we are persuaded that substantial justice will thereby be served. See also *Commonwealth* v. *Simpson*, 428 Mass. 646, 648-649 (1999).

The affidavit on the basis of which the warrant issued provided (1) substantially the same information possessed by the police at the moment they stopped and approached the car Hill occupied in the schoolyard (see *supra* at 600-602), supplemented by (2) the items discovered in the search of that car and of Hill's and Hightower's persons. Those items were a plastic bag that Hightower had been observed stuffing between his seat and the console, containing three additional plastic bags with a white rock substance in each that later proved to be cocaine, about $400 in cash taken from each individual, and a pager found on Hill. Even under the applicable deferential standard of review,[12] this warrant fails judicial muster.

---

[11]Hill's challenge to the sufficiency of the affidavit in support of the search warrant would ordinarily fail because she did not provide a copy of either the affidavit or the warrant in the record. The Commonwealth, commendably, included them in the addendum to its reply brief. Hill also failed to seek interlocutory review of the judge's order denying her motion to suppress the fruits of the building search, which could justify our not considering the point. See *Commonwealth* v. *Bass*, 24 Mass. App. Ct. 972, 974 (1987). Cf. *Commonwealth* v. *Guaba*, 417 Mass. 746, 750 n.1 (1994); *Duarte* v. *Commonwealth*, 429 Mass. 1005 (1999).

[12]In reviewing the question whether an affidavit supports a finding of probable cause, we are "mindful that we should not have a 'grudging or negative attitude . . . towards warrants', that we should pay great deference to the magistrate's determination of probable cause, and that a 'practical, common-sense judgment [is] called for . . . .' " *Commonwealth* v. *Upton*, 390 Mass. 562, 568-569 (1983) (citations omitted), rev'd., *Massachusetts* v. *Upton*, 466 U.S. 727 (1984), *S.C.*, *Commonwealth* v. *Upton*, 394 Mass. 363 (1985). On the other hand, the warrant must be supported solely by the affidavit, and evidence from the evidentiary hearing on a motion to suppress cannot be considered by a reviewing court. See *Commonwealth* v. *Germain*, 396 Mass. 413, 415 n.4 (1985). We note, as did the motion judge, that there was much less information regarding the informant's tip in the affidavit of Officer Santaniello on which the warrant issued than was produced at the suppression hearing, rendering that foundation stone of the police search effort far less

The totality of the first category of information has already been adjudged, in the immediately preceding section, to be inadequate to establish probable cause. The second category — the tainted fruits of the warrantless searches of the car and Hill — cannot be utilized to bolster the first insufficient quantum of evidence, because information obtained by the police in violation of constitutional rights — even if in good faith — may not be considered in the determination of probable cause and cannot support the issuance of a warrant in this Commonwealth. See *Commonwealth* v. *Forde*, 367 Mass. 798, 807-808 (1975); *Commonwealth* v. *White*, 374 Mass. 132, 138-139 (1977), aff'd, *Massachusetts* v. *White*, 439 U.S. 280 (1978); *Commonwealth* v. *Meehan*, 377 Mass. 552, 568-569 (1979); *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 713-718 (1986). Cf. *Commonwealth* v. *Hall*, 366 Mass. 790, 792-798 (1975); *Commonwealth* v. *Pietrass*, 392 Mass. 892, 900-901 (1984); *Commonwealth* v. *Treadwell*, 402 Mass. 355, 356 n.3 (1988); *Commonwealth* v. *Hecox*, 35 Mass. App. Ct. 277, 282 n.6 (1993).[13]

5. *Conclusion.* The order dismissing the indictments against Hill for possession of cocaine with intent to distribute and such possession and intent within a school zone is *reversed*; the order dismissing the indictment against Hill for possession of a firearm or ammunition is *affirmed*; the order suppressing the evidence

substantial than the hearing version which itself failed the veracity test. For example, the affidavit did not attribute the personal observation of drug transactions of any sort inside 16 Gold Street to the "confidential informant" whose past information had allegedly proved reliable, but rather to one of several unidentified sources. Moreover, the described tip from the "confidential informant" was silent not only as to the dates of reported drug transactions (a "serious defect", see *Commonwealth* v. *Morton*, 26 Mass. App. Ct. at 950-951), but also as to the manner by which drugs were allegedly obtained by Hill and Hightower for sale or delivery, whether any sales had actually been made in the apartment, and whether any drugs were ever seen or stored at 16 Gold Street.

[13]Without citing authority, the motion judge incorrectly held that the illegality of the searches of Hill's car and person was irrelevant, stating that "I do not believe the clerk magistrate was obliged to determine whether . . . the 'arrest' and seizure of cocaine from the defendant's vehicle satisfied constitutional standards." While the observation may literally be true, it does not address the critical question, which is not what a magistrate must consider but whether a warrant that relies on information obtained through a seizure and search violative of the Fourth Amendment is valid.

seized during the search of Hill's car and person is *affirmed*; the order denying Hill's motion to suppress the evidence seized during the search of her apartment and the cellar is *reversed*; and the case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*