## Commonwealth *vs.* Thomas J. O'Day, Third.

No. 01-P-46.

Plymouth. April 12, 2002. - December 24, 2002.

Present: Beck, Berry, & McHugh, JJ.

Further appellate review granted, 439 Mass. 1101 (2003).

*Search and Seizure,* Warrant, Probable cause.

The evidence before the magistrate who issued a warrant to search a
    defendant's house did not constitute a substantial basis to believe that there
    were drugs in the defendant's house, and therefore, the judge at the
    defendant's criminal trial should have allowed the defendant's motion to
    suppress evidence seized as a result of the search, where the connection
    between the defendant's drug-dealing activities at his place of work and
    his house was limited to the facts that the defendant lived at the address,
    that on two occasions he drove directly from home to work where he sold
    cocaine, and that some undetermined number of cars made brief visits to
    the address during surveillance conducted on two nights three weeks apart.
    [836-841]

INDICTMENTS found and returned in the Superior Court Department on January 16, 1998.

A pretrial motion to suppress evidence was heard by *Richard J. Chin,* J.; a motion to dismiss was heard by *Mitchell J. Sikora, Jr.,* J.; and the cases were tried before *John A. Tierney,* J.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

BECK, J. The defendant appeals from the denial of his motion to suppress evidence seized in a search of his home. He also claims error in the denial of his motion to dismiss an indictment for possession of an infernal machine (a grenade simulator) found in his bedroom during the search. Although the warrant authorized a search for "controlled substances" and related equipment and records, the only charge on which the defendant was found guilty was possession of the grenade simulator. He

was acquitted of possession of cocaine and of a firearm. The issue on appeal is whether there was probable cause to support the warrant.

1. *Factual background.* There is no dispute that there was probable cause to believe that the defendant was dealing drugs at DJ's pub in Brockton, where he was the doorman. As set out in the affidavit of an experienced State trooper, the facts are as follows. An informant told the police he bought cocaine from the defendant and another man at DJ's pub and that the men kept the cocaine "on their person." He also reported that the other man lived in an apartment over the pub. According to the informant, the defendant supplied "other Hispanic and young black males with cocaine for distribution."

In response to the informant's information, the State police set up surveillance inside and outside the pub. On several occasions they observed men in the pub who were not drinking, but were pacing back and forth, looking out the front door. As soon as the defendant arrived, the men approached him, had what appeared to be brief conversations with him, walked into the men's room with him, and then left the pub as soon as they emerged from the men's room. On other occasions the defendant appeared to conduct transactions literally under the table. Three controlled buys, two in the men's room and one under the table, were sufficient to corroborate the informant's statements that the defendant was selling cocaine at the pub. See *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 427 (1995).

On two occasions the police engaged in surveillance of the defendant's house at 10 Hunt Street in Brockton. (The informant had not provided any information about that location.) When the police arrived for the first surveillance at 7:00 P.M. on October 9, 1997, they saw cars parked in the driveway and on the street in front of the defendant's house. At 7:30 P.M., a white Ford Bronco sport utility vehicle registered to Catherine Livargo of an address in East Bridgewater pulled up in front of the house. Livargo was known to be the defendant's girlfriend. The affiant stated that he saw "other vehicles" also pull up in front of 10 Hunt Street. "After a brief stay these vehicles and their occupants departed [the] location." The defendant and his girlfriend emerged from the house about 8:00 P.M. and embraced.

The girlfriend left in the white Bronco. The defendant left at 8:13 P.M. in a blue Ford pickup truck, also registered to his girlfriend, and drove directly to the pub. (The electrical service to the house was also in the girlfriend's name.) At the pub the defendant engaged in what appeared to be two under-the-table transactions, one with a Hispanic man the surveillance officers had seen two weeks before, and the other in the second of the controlled buys. After the transaction involving him, the Hispanic man went up a flight of stairs leading to the apartments above the bar.

Three weeks later, the police conducted a second surveillance at 10 Hunt Street, again beginning at 7:00 P.M. The officers "made note of several vehicles that arrived and departed [the defendant's] residence after a brief stay." Again the girlfriend arrived after 7:00 P.M. and left before 8:00 P.M. The defendant left at 8:04 P.M., again in the blue pickup, and again drove directly to the pub. There was another controlled buy, this time in the men's room. On this evening, the affiant also saw the defendant leave the pub several times for brief conversations on a wireless telephone. At one point the defendant appeared to retrieve something from the blue pickup truck, which was parked across the street.

On the basis of the evidence set out above, a magistrate issued a search warrant for 10 Hunt Street. The search uncovered a grenade simulator in the bureau in the defendant's bedroom, and 1.64 grams of cocaine and a revolver in a black padlocked box hidden in the ceiling area of the basement.

2. *The motion to suppress.* In summarizing the basis for his request for a warrant to search the defendant's house, the State trooper noted the motor vehicle traffic at the house (which he termed "consistent with narcotics distribution") and the fact that the defendant appeared to have "a quantity of cocaine on his person readily available for sale." The trooper expressed the opinion that "a quantity of cocaine is carried from [the defendant's] residence in his vehicle to his place of work. While at work, as his supply of cocaine diminishes, [the defendant] replenishes same by a stash that he maintains in his truck."

In denying the defendant's motion to suppress, the motion judge found that "[o]n most occasions, suspected drug activity

confirmed by surveillance of any kind warrants a reasonable belief that a residence may be connected to some sort of criminal activity," citing *Commonwealth* v. *DiStefano*, 22 Mass. App. Ct. 535, 540 (1986). He further noted that "it is proper to infer that a drug dealer would keep drugs that he may be dealing within his home," citing *United States* v. *Gant*, 759 F.2d 484, 488 (5th Cir.), cert. denied, 474 U.S. 851 (1985), and *Commonwealth* v. *Singer*, 29 Mass. App. Ct. 708, 715 (1991) (disapproved on other grounds in *Commonwealth* v. *Ramirez*, 416 Mass. 41, 53 n.19 [1993]). Relying on the fact that the police saw "a high incidence of 'come and go' traffic from the defendant's residence," the judge concluded that "[t]his type of behavior is consistent with narcotics distribution." He ruled that "[i]t was proper for the police to believe that the defendant was keeping controlled substances within his home since he went directly from home to work on the nights that the drug transactions were observed."

a. *Governing legal principles.* In reviewing a motion to suppress, we accept the judge's findings of fact unless they are clearly erroneous, but we conduct a de novo review of his conclusions of law. *Commonwealth* v. *James*, 427 Mass. 312, 314 (1998). "The standard for probable cause is 'whether [the magistrate] has a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched . . . . Strong reason to suspect is not adequate.' " *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 600 (1991), quoting from *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985). "The establishment of probable cause to believe that 'a person is guilty of a crime does not necessarily constitute probable cause to search the person's residence.' . . . The connection between the items to be seized and the place to be searched . . . may be found by looking at the type of crime, nature of the items, the suspect's opportunity to conceal items, and inferences as to where the items are likely to be hidden." (Citation omitted.) *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. at 600.

b. *Discussion.* As he did below, the defendant contends that two of the motion judge's findings of fact are unsupported by the record: (1) that there was a "high incidence of 'come and go'

traffic" at his house; and (2) that the defendant had a lengthy criminal record. A review of the affidavit confirms that the affiant did not use the words "high incidence of 'come and go' traffic" or "steady *flow* of 'come and go' traffic" as the judge did in describing what the police observed during their surveillance of the defendant's house. As to the first surveillance, the affidavit sets forth that after the girlfriend arrived, the police saw "other vehicles . . . pull up in front of this address and subjects walk into [the defendant's] residence [and a]fter a brief stay these vehicles and their occupants departed this location." On the second surveillance, the affiant reported that "several vehicles . . . arrived and departed [the defendant's] residence after a brief stay." We agree that "other vehicles" and "several vehicles" do not constitute "a high incidence" or "steady flow" of come and go traffic. We therefore disregard the judge's description in our analysis of the probable cause issue. As to the extent of the defendant's criminal record, that issue has no relevance to the nexus between the defendant's house and his narcotics activity.

Having highlighted these factual errors, the defendant argues that the motion judge erred in concluding that the magistrate had a sufficient basis for issuing the warrant to search the house. As the defendant points out, the cases on which the judge relied are distinguishable on their facts. In *Commonwealth* v. *Singer*, 29 Mass. App. Ct. at 710, the police had informant information that the defendant was selling drugs from the apartment to be searched, and at least some of the people seen entering the apartment were known to be involved in cocaine dealing. Such is not the case here. There is no indication that the informant ever mentioned the defendant's residence, the sale of drugs from that location, or the girlfriend. Moreover, whatever their number, none of those who paid a brief visit to the defendant's house was identified as having any connection with narcotics or their distribution.

In *Commonwealth* v. *DiStefano*, 22 Mass. App. Ct. at 537–538, which the judge also cited, the informant said he had accompanied a friend to the defendants' home to buy heroin and surveillance officers saw a known drug dealer enter the defendants' house with a small package. *United States* v. *Gant*,

759 F.2d 484 (5th Cir.), cert. denied, 474 U.S. 851 (1985), was not decided on probable cause grounds, but instead relied upon the Supreme Court's good faith exception to the exclusionary rule, as set out in *United States* v. *Leon*, 468 U.S. 897 (1984). That is not an issue here. Cf. *Commonwealth* v. *Pellegrini*, 405 Mass. 86, 91 n.6, cert. denied, 493 U.S. 975 (1989) (noting that Massachusetts has not adopted good faith doctrine of *United States* v. *Leon*); *Commonwealth* v. *Hecox*, 35 Mass. App. Ct. 277, 282 n.6 (1993) (same).

The motion judge also relied on *Commonwealth* v. *Cinelli*, 389 Mass. 197, cert. denied, 464 U.S. 860 (1983). However, that case involved a search for the "fruits and instrumentalities" of an armed robbery and the shooting of a police officer — clothes, money, weapons, and ammunition. *Id.* at 214 n.16. Since the nature of the crime and the items being sought are relevant factors in determining probable cause, see *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. at 600, and given the extensive case law of search and seizure involving narcotics, we shall focus on those cases.

As the defendant argues, cases finding a sufficient nexus between the contraband sought and the place to be searched generally involve a more direct connection between the two than is the case here. For example, in *Commonwealth* v. *Hall*, 366 Mass. 790, 797-798 (1975), an informant provided a reliable tip that drugs were available in the second-floor apartment at a particular address. In *Commonwealth* v. *Parapar*, 404 Mass. 319, 320-321 (1989), the informants supplied detailed information about activities at the place to be searched, where police had observed "numerous" people entering and leaving the apartment. See *Commonwealth* v. *Blake*, 413 Mass. 823, 828-829 (1992) (informant information that defendant was selling large amounts of drugs from his apartment corroborated by controlled buy, for which defendant left his house and drove directly to point of sale); *Commonwealth* v. *DiStefano*, 22 Mass. App. Ct. at 538-539 (police observed known drug dealer arrive at address, stay for thirty minutes, and then reenter carrying package from his car; others also seen visiting house including repeat visit from same known dealer and another identifiable drug offender); *Commonwealth* v. *Soto*, 35 Mass. App. Ct. 340,

344 (1993) (officers observed numerous suspicious short visits to apartment at precise time when informant told officer that cocaine would be ready); *Commonwealth* v. *Watson*, 36 Mass. App. Ct. 252, 254-255 (1994) (informant's tip that cocaine was for sale at particular address corroborated by observation of cars double parked and people running inside and leaving within a few minutes); *Commonwealth* v. *Alcantara*, 53 Mass. App. Ct. 591, 593-594 (2002) (sufficient nexus established where defendant was known to deliver cocaine at place of his choosing away from his apartment; confidential informant arranged to meet defendant for drug transaction, defendant was observed leaving address, defendant delivered drugs to informant, and defendant returned directly home). Contrast *Commonwealth* v. *Kaufman*, 381 Mass. 301, 304 (1980) (finding particular details lacking to connect address to drug sales despite observation of "unknown male carrying into . . . target premises several plastic bags allegedly 'consistent' in size and shape with bags commonly used to transport large amounts of marihuana" and despite undercover agent's report that drugs were kept in house).

Recently we have reversed the denial of motions to suppress for want of sufficient nexus between the activities at issue and the defendant's residence. In *Commonwealth* v. *Hill*, 51 Mass. App. Ct. 598 (2001), the police had received anonymous information about drug dealing in the apartment, but there were no observations of actual drug deals, and no information about the less than ten unknown individuals seen making short visits to the two-story duplex, apparently over a two-week period, except for one who was a known drug dealer and user. We termed the visits to the apartment "minimal foot traffic," *id.* at 607, and concluded the evidence in that case did not constitute adequate corroboration of anonymous tips. *Id.* at 607-609. In *Commonwealth* v. *Chongarlides*, 52 Mass. App. Ct. 366, 369-372 (2001), a case involving a search for heroin in connection with a death, we concluded that the motion to suppress was properly allowed because there was no basis to believe the heroin would be found at the defendant's house in view of the fact that the ingestion had taken place elsewhere. See *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. at 597, 600-601 (no specific information in affidavit tying defendant's residence to

drug sales except observation of defendant departing from house just before arriving to execute controlled buy). See also *Commonwealth* v. *Gauthier*, 425 Mass. 37, 40-41 (1997) (reliability of informant established, but nothing pointed to defendant's residence as place of supply). We do not find the Federal cases the Commonwealth cites in support of its argument persuasive.

Although the question is close, we conclude that probable cause to believe there were drugs at the defendant's house was lacking. We are mindful that the magistrate's determination of probable cause is due great deference. *Commonwealth* v. *Upton*, 394 Mass. at 377. On the other hand, "[p]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 696 (1984), quoting from *Welsh* v. *Wisconsin*, 466 U.S. 740, 748 (1984). The evidence of a connection between the defendant's activities at the pub and his house was limited to the facts that the defendant lived at the address, that on two occasions he drove directly from home to work where he sold cocaine, and that some undetermined number of cars ("other vehicles" and "several vehicles") made brief visits to the address during surveillance conducted on two occasions three weeks apart. The informant who brought the defendant to the attention of the police did not allege that the defendant was distributing cocaine from his house; indeed, he did not mention the defendant's house at all. Nor did anyone see the defendant, his girlfriend, or any of the visitors carrying anything at any time while they were under surveillance. None of those observed during the surveillance of the defendant's house was identified as having any connection with the use or distribution of narcotics. In sum, the evidence before the magistrate did not constitute a "substantial basis," see *Commonwealth* v. *Upton*, *supra* at 370, to believe there were drugs in the defendant's home. The motion to suppress should have been allowed. Having concluded that the evidence seized from the defendant's house should be suppressed for want of probable cause, we

need not reach the issues raised in the defendant's motion to dismiss the infernal machine indictment.

*Judgment reversed.*

*Verdict set aside.*

*Judgment for defendant.*