Agnes, A.J.
The defendant Marin Sok (“Sok”) and others are charged with trafficking in cocaine over 28 grams (approximately 60 grams) (G.L.c. 94C, §32E(b)(2)) found in a room of an apartment at 103 Westford Avenue in Lowell. The defendant has filed a motion to dismiss on grounds that the grand jury did not hear sufficient evidence of his involvement in criminal activity to warrant probable cause to believe he had committed a crime and the return of an indictment. See Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982).
BACKGROUND
The Middlesex County Grand Jury heard evidence in this case from a single witness, Detective Linda Coughlin of the Lowell Police Department, an experienced narcotics officer who has worked in an undercover capacity and who had had dealings with narcotics sellers and buyers. On October 14, 2002, the Lowell Police were conducting surveillance of 103 Westford Avenue when they observed a codefendant, Rasmei Doung, leave the address and drive to a nearby location where he sold cocaine to a female who was operating a vehicle with New Hampshire plates. Thereafter, Mr. Doung returned to 103 Westford Avenue. Detective Coughlin also explained that police surveillance on October 15, 2002 included an observation of a second codefendant, Savith Chhoun who left the premises in a red Acura motor vehicle and drove to another address in Lowell where he sold cocaine to a female resident. Later that same day, codefendant Doung was observed to leave the residence, enter a black SUV, and drive off. The vehicle was stopped by the police and codefendant Doung was arrested.
According to detective Coughlin, following the arrest of codefendant Doung, the police executed a search warrant for 103 Westford Street. She testified that there were two persons in the residence, defendant Sok and codefendant Chan. These individuals were found in the “front bedroom.” (Grand Jury Minutes of February 12, 2003 at 20 (hereafter, “GJ”).) The search led to the seizure of two large plastic bags containing cocaine, $1900 in United States currency, a notebook, glassine sandwich bags like those often used to package cocaine, three cellular phones, pagers in the name of Chan Chhoeumg and Savith Chhoun, a digital scale like those commonly used to weigh cocaine and scissors. There is no indication of where in the residence these items were found, and no statement that at any time the defendant Sok was in the same room or area of the residence where any of *509 these items was found. Detective Coughlin testified that nothing of significance was found on the defendant Sok, while a quantity of cocaine was found on defendant Chan. (GJ 21-22.) Finally, the Grand Jury heard evidence that based on the nature of the packaging and the quantity of cocaine found in the residence at 103 Westford Avenue, it was more likely intended for distribution than personal use.
During the presentation to the grand juiy, a juror questioned the detective about whether any drugs were found on Mr. Sok’s person (answer: no) and whether the police found “any evidence that he is a resident of that place?” According to detective Cough-lin, “Based on the investigation and what had happened up until that point, Mr. Sok was also arrested and charged with the narcotics seized from the residence.” A further question was asked. “Did you find any personal papers, however, in Mr. Sok’s name?” The answer by detective Coughlin was “Yes, I believe we did. I’m not exactly sure what they were in the name of Marin Sok.” (GJ 26.) The questioning continued. “Just so we’re clear, he was present in the apartment when you executed the warrant; is that correct?” The answer by detective Coughlin was “Yes.” And the final question and answer was as follows: Question: “And do you recall where detective O’Shaughnessy or Agent O’Shaughnessy found these two larger glassine bags of cocaine?” Answer: “In the livingroom, feet away from where they were.” (GJ 26-27.)
DISCUSSION
1. Standard of Review
“Generally a court will not inquire into the competency or sufficiency of the evidence before the grand jury.” Commonwealth v. Coonan, 428 Mass. 823, 825 (1999). An indictment may be based entirely on hearsay, Commonwealth v. St. Pierre, 377 Mass. 650, 654-55, (1979), at least so long as the hearsay is reasonably reliable. Id. at 656. In Commonwealth v. McCarthy, 385 Mass. 160 (1982), the Supreme Judicial Court recognized a narrow exception to that general rule by acknowledging that “at the very least the grand jury must hear sufficient evidence to establish the identity of the accused, and probable cause to arrest him. A grand juiy finding of probable cause is necessary if indictments are to fulfil their traditional function as an effective protection ‘against unfounded criminal prosecutions.’ ” Id. at 163 (quotation omitted). Probable cause is based on “reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed ... an offense.” Commonwealth v. O’Dell, 392 Mass. 445, 450 (1984), quoting Commonwealth v. Stevens, 362 Mass. 24, 26 (1972). However, an indictment is not to be dismissed merely because “the evidence probably would not have been sufficient to overcome a motion for a required finding of not guilty at a trial.” Commonwealth v. O’Dell, supra at 450.
2. The Merits
The question in this case becomes whether, viewing the evidence in the light most favorable to the Commonwealth, there is probable cause to believe that the defendant had possession of the quantity of cocaine that was found in the apartment. The evidence presented to the grand jury established that the defendant was present in the apartment’s “front bedroom” while the drugs and paraphernalia were located in a different room. No drugs or paraphernalia were found on the defendant’s person. Personal pápers associated with the defendant but of an unknown description were also apparently found somewhere in the apartment.
The Commonwealth’s reliance on Commonwealth v. Gonzalez, 23 Mass.App.Ct. 990, 991 (1987), is misplaced for there the personal papers included an envelope addressed to the defendant at the apartment in question. Moreover, in Gonzalez, the defendant was found asleep with his head resting on a pillow below which were discovered numerous bags of heroin. Furthermore, the Commonwealth’s argument that the short distance between the location in the apartment where the drugs were located and where the defendant was found and arrested (“a few feet”) permits an inference that the defendant had knowledge of the presence of a large quantity of cocaine in the apartment fails in these circumstances because there was also evidence that the defendant and the drugs were in separate rooms.
The Commonwealth also argues that this is a case like Commonwealth v. Pratt, 407 Mass. 647, 652 (1990), where the Supreme Judicial Court concluded that the evidence supported an inference of constructive possession. However, a careful reading of Pratt reveals that it too is readily distinguishable. There, the Supreme Judicial Court dealt with the search of a small, one-room cottage that was plainly the residence of the defendant.
Possession implies control and power,... exclusive or joint. . ., or, in the case of constructive possession, knowledge coupled with the ability and intention to exercise dominion and control. The evidence warranted an inference that Mrs. Pratt had knowledge of the drugs found. She had been sitting quietly on the bed as the police conducted their search, and only when a police officer reached a shelf which contained a large quantity of contraband, at least five minutes into the search, did Mrs. Pratt get up from the bed, point to the shelf, and begin to speak. The juiy could infer that Mrs. Pratt’s gesture stemmed from her knowledge of the contraband’s presence. In addition, there was evidence that drugs, drug paraphernalia, and a drug transaction list were in plain view in the small one-room cottage. The fact that the drugs found in the woods were packaged in an identical manner to those found in the cottage, and that they were of *510 the same type and “brand,” allowed an inference that Mrs. Pratt knew of their presence.
The juiy could also infer that Mrs. Pratt had the ability and intention to exercise dominion and control over the contraband. There was evidence that Mrs. Pratt resided with Pratt in the cottage where a portion of the contraband was stored. When contraband is found in a dwelling shared by a defendant and one or more other persons, a finder of fact may properly infer that the defendant is in possession of the contraband . . . from evidence that the contraband was found in proximity to personal effects of the defendant in areas of the dwelling, such as a bedroom or closet, to which other evidence indicates the defendant has a particular relationship. Forty-four bags of heroin, forty-four methaqualude tablets, a bottle of methadone tablets, and seven syringes and needles were all found on an open shelf amidst towels, stockings, and toiletries. From her possession of the drugs in the cottage, from the similarity between the packaging and the type of drugs found in the cottage and those found in the woods, from her knowledge, as evidenced by the drug transaction sheet, of the scale of the drug operation, and from her access to and use of the surrounding property, the jury could infer that Mrs. Pratt was in possession of the drugs found on the property.
Commonwealth v. Pratt, supra, 407 Mass. at 652-53 (quotations and citations omitted). This is not a case like Commonwealth v. Hill, 51 Mass.App.Ct. 598 (2001), also relied upon by the Commonwealth, in which the defendant’s presence in a residence coupled with activities involving other people permit an inference that he was aware of the presence of narcotics. In Hill, the Appeals Court observed that,
The grand jury heard evidence that Hill-a convicted drug dealer identified as continuing in the cocaine distribution business by a police informant claiming personal knowledge-was at least inferentially present when a known drug user and suspected dealer visited her building; that following that visitor’s arrest immediately after leaving 16 Gold Street, the police found cocaine in the visitor’s possession; that Hill and Hightower left the apartment shortly after the user’s arrest and proceeded in a car to a schoolyard; that at the schoolyard during a search, police found in that car a substantial amount of cocaine packaged for resale, found in Hill’s possession a common accouterment of the drug trade (a pager), as predicted by the informant, and a significant amount of cash, and also found in Hightower’s possession a significant amount of cash; and that in her apartment the police discovered a very large stash of cash. The totality of that evidence warranted a person of reasonable caution to conclude that Hill had probably committed the charged drug offense, in that, she could be rationally deemed to have had actual or constructive possession of the cocaine seized from her car and to have intended to distribute it within a school zone.
Id. at 598 (citations omitted).
In this case, defendant’s Sok’s name does not appear anywhere in the investigation until the execution of the warrant, and there is no association between defendant Sok and others involved in drug transactions. Indeed, the evidence offered against the defendant Sok is far less incriminating than the evidence regarded as insufficient in Commonwealth v. Caterino, 31 Mass.App.Ct. 685, 688. (The required nexus between the defendant and the place where the cocaine was found was not established. The only evidence was the defendant’s automobiles observed near the apartment and his presence in the bathroom off the master bedroom on the day of the search. Even though the defendant had a prescription pill on his person when arrested, there was no evidence that he was present at the subject apartment any time except the day of the search. No evidence was presented that he rented, occupied, spent a great deal of time at or exercised control over the apartment or its contents.). While it is true that in this case there is evidence that the police found some “personal papers” in the name of the defendant at the apartment, there is no reason to infer, without more, that they connected him to the apartment. See, e.g., Commonwealth v. Ramos, 51 Mass.App.Ct. 901 (2001) (‘jT]he envelope containing the two letters to the defendant was addressed to the defendant at a different address”); Commonwealth v. Pursley, 2 Mass.App.Ct. 910 (1975) (no constructive possession was found when the defendant’s personal papers were found in the apartment, but were not addressed there, and the defendant had not been observed at the apartment for several months); Commonwealth v. Miguel, 14 Mass. L. Rptr. 355, 2002 WL 483863 (Mass. Superior Court 2002). Contrast, Commonwealth v. Lee, 2 Mass.App.Ct. 700, 704 (1974) (Defendant’s papers, including mail addressed to the defendant at the address, and men’s clothing found in the same apartment as the “stash” supported a finding of constructive possession). In this regard, the presence of “personal effects” as opposed to “personal papers” may be determinative. See Commonwealth v. Garcia, 49 Mass.App.Ct. 1117 (2000) (“(A) wallet containing papers regarding money transfers involving the defendant, as well as some men’s clothing, were found in the bedroom”).
CONCLUSION
This case is controlled by the rule that mere presence in a location where narcotic drugs are found coupled with an association with persons who had control over narcotics is not sufficient to establish that the individual had actual or constructive possession of the drugs. See Commonwealth v. Booker, 31 Mass.App.Ct. 435, 437-38 (1991). While there maybe *511 cases in which circumstantial evidence is sufficient to establish probable cause though not sufficient to establish guilt, this is a case in which the evidence permits neither finding to be made. Accordingly, the defendant’s motion to dismiss is ALLOWED.